

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2000

# Watson v. Eastman Kodak Co.

Precedential or Non-Precedential:

Docket 99-3520

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Watson v. Eastman Kodak Co." (2000). *2000 Decisions.* Paper 255.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/255

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 21, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3520

JOHNNY WATSON,
        Appellant,

v.

EASTMAN KODAK COMPANY.

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: Robert J. Cindrich
(D.C. Civ. No. 98-01330)

Argued October 24, 2000

Before: BECKER, Chief Judge, SCIRICA and FUENTES,
Circuit Judges.

(Filed: December 21, 2000)

        Neal A. Sanders (argued)
        Law Offices of Neal Alan Sanders
        1924 North Main Street Extension
        Butler, Pennsylvania 16001
        Attorneys for Appellant

        Michael A. Fitzhugh (argued)
        Fitzhugh & Associates
        155 Federal Street, Suite 1700
        Boston, Massachusetts 02110
        Attorneys for Appellee

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Johnny Watson alleges that he was r emoved
from his position of Account Executive at Eastman Kodak
Company ("Kodak") because of unlawful race and age
discrimination. Under federal law, a complainant has 300
days from the date of the adverse employment decision to
file a claim with the Equal Employment Opportunity
Commission ("EEOC"). In Delaware State College v. Ricks,
449 U.S. 250 (1980), the Supreme Court held that an
adverse employment action occurs, and the statute of
limitations therefore begins to run, at the time the
employee receives notice of that action and ter mination is
a delayed but inevitable result. Relying on Ricks, the
District Court measured the limitations period from the
date on which Watson was notified of his termination from
the Account Executive position, and dismissed W atson's
claim as untimely. Watson asserts that Ricks's date of
notification rule does not control the limitations period in
his case because Kodak left open the possibility of Watson's
continued employment with the company. We disagree.
Because we concur with the District Court that the r elevant
date from which to measure the timeliness of Watson's
discrimination claim is the date on which he was r emoved
from the Account Executive position, and because we
conclude that the mere speculative possibility of continued
employment does not alter Ricks's date of notification rule,
we will affirm.

I.

Johnny Watson began working for Kodak in 1979, and
was promoted in 1988 to the position of Account Executive.

2

He alleges that in that capacity he consistently met his sales quotas and received several employment awards, including five 100% club awards and one master club award for reaching 140% of his sales quota. He also reportedly received favorable perfor mance evaluations and was not subject to any disciplinary action.

In December 1994, Watson transferred to Kodak's office in Pittsburgh, Pennsylvania, where he was the only African-American Account Executive. Roger Gagnon was his immediate supervisor. Watson alleges that, from the outset, Gagnon interfered with his perfor mance by refusing to provide support comparable to what he of fered younger, white Account Executives. According to W atson, Gagnon's interference prevented him fr om meeting his sales quotas for 1995 and 1996.

In January 1997, Watson wrote a letter to Gagnon complaining about these matters and contending that race discrimination was the reason for that lack of support. Gagnon responded in a letter dated February 4, 1997, informing Watson that, due to poor per formance, he was retroactively removed from his Account Executive classification effective January 1, 1997. It also stated that Watson would be allowed to remain with Kodak beyond March 7, 1997 only if he was successful in obtaining another position within the company, an effort with which Gagnon professed he would help. Watson failed to find another position. Consequently, Kodak terminated his employment on March 7, 1997.

Thereafter, Watson was hospitalized briefly in Pennsylvania. Upon his release, in June 1997, he traveled to Florida where he stayed at his mother's r esidence. While in Florida on December 31, 1997, realizing that the administrative deadline for filing a discrimination charge was about to expire, Watson filed a claim with the EEOC at its Miami, Florida branch, alleging violations of T itle VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. SS 2000e to 2000e-17, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. SS 621 to 634. When he filed the discrimination charge, Watson described the adverse action taken against him as follows:

3

> I was employed by Eastman Kodak Company for
> eighteen years. During that time there wer e several
> situations revolveing [sic] around pay, assignments to
> territory and like [sic] of understanding. I believe that
> my race and age at the time of my termination from
> [sic] played a roll [sic] in their decision to release me.

The EEOC investigator informed Watson that the claim
would be processed, then transferred back to Pennsylvania.
On May 7, 1998, after retaining counsel, W atson filed an
amended charge in which he added a pay discrimination
claim.

Relying upon Delaware State College v. Ricks, 449 U.S.
250 (1980), the District Court concluded that W atson's
unlawful termination claim accrued on February 4, 1997,
the date he received Gagnon's letter. Because Watson
submitted his EEOC charge 330 days later , on December
31, 1997, the Court determined his claim fell outside the
statutorily allotted 300 day filing deadline. Consequently,
the Court granted Kodak summary judgment.

On appeal, Watson argues that the District Court
misconstrued Ricks and that it erred in failing to conclude
that his termination claim accrued on Mar ch 7, 1997,
which is within 300 days of the date he filed his EEOC
discrimination charge in Florida. He also contends that,
even if we determine that the termination claim was
untimely, we should find that his discrimination in
compensation claim, based on a continuing violation
theory, was timely.

II.

This Court's review of a grant of summary judgment is
plenary, and the record is judged by the same standard
district courts use. Witkowski v. W elch, 173 F.3d 192, 198
(3d Cir. 1999). Federal Rule of Civil Pr ocedure 56 governs
summary judgment motions. Subsection 56(c) pr ovides, in
part, that:

> [t]he judgment sought shall be render ed forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,

4

> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment
> as a matter of law.

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doherty v. Teamsters Pension T rust Fund, 16 F.3d 1386, 1389 (3d Cir. 1994).

III.

Under Title VII and the ADEA, plaintif fs residing in states having an agency authorized to grant relief for federally prohibited employment discrimination must r esort to that state remedy before they will be allowed access to federal judicial relief. See 42 U.S.C. S 2000e-5(c) (Title VII); 29 U.S.C. S 633(b) (ADEA); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 754-58 (1979). Such states are ter med "deferral" states. See Evans, 441 U.S. at 758. It is undisputed that Pennsylvania is a deferral state. See 43 Pa. Cons. Stat. SS 955(a), 959; Sharpe v. Pennsylvania Hous. Auth., 693 F.2d 24, 26 (3d Cir. 1982).

Title VII and ADEA plaintiffs such as W atson, who file in deferral states, must submit their administrative discrimination charge within 300 days of the challenged employment action. See 42 U.S.C. S 2000e-5(e)(1) (Title VII); 29 U.S.C. S 626(d)(2) (ADEA); Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413-15 (3d Cir. 1991) (en banc). Therefore, Watson's attempt to obtain relief under federal law from Kodak's alleged employment discrimination on the basis of race and age may proceed only if he filed his administrative charge of discrimination within 300 days of the unlawful employment actions he challenges.

The crucial issue in this case is whether the actionable adverse employment decision was the one to separate Watson from the position of Account Executive or the one to terminate his employment with Kodak entir ely. We begin our analysis of the timeliness issue with the Supr eme Court's decision in Delaware State College v. Ricks. In

5

Ricks, a professor at Delaware State College challenged the college's decision not to grant him tenure as being unlawfully based on national origin discrimination. Ricks, 449 U.S. at 252. The professor pursued inter nal grievance procedures within the college to pr otest the tenure denial, and in the meantime the college, as it customarily did, entered into a one year "terminal" contract with him that allowed the professor one extra year of employment before his actual termination. Id. at 252–54.

Of primary importance in the case, due to the date the professor filed his administrative discrimination charge, was the date that his unlawful termination claim accrued. See id. at 254–56. The professor ar gued that it accrued on the date of his final day of employment under the one–year terminal contract. See id. at 257. The Supreme Court rejected his theory, ruling instead that his unlawful termination claim accrued when he initially r eceived the college's notice that he had been denied tenur e. Id. at 259, 261–62.

The Court emphasized that the key inquiry was identifying the precise alleged unlawful employment practice. Id. at 257. This was the central issue because the relevant federal statute, Title VII, measured the administrative charge's timeliness from the date " `the alleged unlawful employment practice occurred.' " Id. at 256 (quoting 42 U.S.C. S 2000e–5(e)); accor d 29 U.S.C. S 626(d)(2) (for ADEA claims, timeliness of administrative charge is measured from date "the alleged unlawful practice occurred"). The Supreme Court found it immaterial that the professor's denial of tenure did not manifest itself until one year later, when his terminal contract expired. See Ricks, 449 U.S. at 258. The Court instead approved the maxim that " `[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.' " Id. (quoting Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979)). Because the professor's allegations in his complaint focused only on his denial of tenur e, the Court concluded that the date he was notified of that decision controlled. Id. at 257–58 & n.9, 261–62.

Watson contends that Ricks is inapplicable. He argues, for example, that the unlawful discrimination he challenges relates to the termination of his employment from Kodak generally, rather than specifically to his dischar ge from the position of Account Executive. This argument fails for two reasons. First, Watson's amended EEOC charge explicitly alleged that "I was discharged from the position of Account Executive, from [Kodak]," and it stated in support that he "was the only black Account Executive in [his] area, and [he] was not receiving support." Second, and more importantly, the only evidence of either race or age discrimination in the record, found in the various verified statements to which Watson attested and that served largely to verify his complaint and the allegations in his EEOC charges, relates solely to Gagnon's supervision of Watson.

In light of these facts, the record does not support Watson's argument that he was challenging his termination from employment in a general sense, as opposed to his termination from the Account Executive position. Just as the professor's allegations in Ricks made it clear that he was challenging the more specific decision to deny him tenure, see 449 U.S. at 257–58, the r ecord in Watson's case demonstrates that he was challenging the specific decision to remove him from the position of Account Executive. See also Chardon v. Fernandez, 454 U.S. 6, 6–8 (1981) (rejecting termination date as the r elevant event since no allegations of discrimination existed between the date of notice of termination and the date of ter mination).

Watson further argues that the date his claim accrued cannot be February 4, 1997 because Gagnon's letter left open the possibility of continued employment in another position with Kodak and therefore it was an equivocal notice of termination. Cf. Smith v. United Parcel Serv. of Am., Inc., 65 F.3d 266, 268 (2d Cir . 1995) ("the limitation period begins to run on the date when the employee receives a definite notice of the ter mination. Moreover, for the notice to be effective, it must be made apparent to the employee that the notice states the official position of the employer.") (internal quotations and citations omitted).

7

However, Gagnon's letter cannot be deemed equivocal merely because it preserved the possibility of continued employment. In Ricks, the professor pursued an internal grievance process that might have resulted in his having obtained tenure. Ricks, 449 U.S. at 252-54 & n.2, 261–62. Despite this action, the Court rejected an argument that the notice of termination was rendered ambiguous by the mere potential for continued employment. See id. at 260–61. Therefore, the District Court correctly determined that Watson's unlawful termination claim relates specifically to his removal from the Account Executive position, and that Gagnon's letter of February 4, 1997 unequivocally informed Watson of that decision.

At oral argument, Watson claimed that, despite Gagnon's letter, he effectively remained in the Account Executive position until March 7, 1997, which we must accept as the date on which he suffered the adverse employment action. However, the last day of employment is not necessarily the date of the adverse employment action. For example, in Ricks, even though the professor's employment continued for one year after he was denied tenure, the Court nevertheless refused to equate the last day of his employment with the date on which the adverse employment action occurred. Id. at 259, 261–62.

Moreover, even if Watson's last day as an Account Executive was March 7, 1997, that cannot serve as the date of the adverse employment action since Gagnon's letter quite clearly informed Watson that, as of February 4, 1997, he was terminated from the Account Executive position. This is true because it does not matter that Watson was notified of his termination several weeks before his ultimate discharge. As a matter of law, notice of an "operative decision" of termination is not equivocal merely because it was "given . . . in advance of a designated date on which employment terminated." See Chardon, 454 U.S. at 8.

Finally, Watson incorrectly relies on the Ninth Circuit's decision in the case of Bouman v. Block, 940 F.2d 1211 (9th Cir. 1991). In Bouman, the plaintiff, a female police officer, instituted a Title VII action against Los Angeles County and the county's sheriff's department, alleging inter alia that the department engaged in gender discrimination by

8

intentionally failing to promote her. Id. at 1221. Under department procedures, eligibility for promotion was determined by the results of a sergeant's examination. Exam scores were used to develop a promotion list, which then served as the basis for promotion within the department for two years. Id. at 1217. After failing to receive a promotion during the list's two-year term, the plaintiff instituted employment discrimination proceedings. She filed an administrative charge within 300 days of the expiration of the promotion list, but well beyond 300 days from the date of the examination and the establishment of the list. In assessing the timeliness of the claim filed, the Ninth Circuit held that the claim accrued when the promotion list expired, not when the promotion list was established or the promotion exam was given. Id. at 1221. The Bouman Court distinguished Ricks because there, the professor's "termination . . . was a delayed but inevitable result of being denied tenure." Id. In Bouman's case, by contrast, it was not certain that the petitioner would not be promoted until the list had expired. She did not know until that date that she had suffered an injury.

Watson argues that Bouman, rather than Ricks, controls because when he received Gagnon's February 4, 1997 letter, his termination from the Account Executive position was not a delayed but inevitable result since he might have remained in that position in another part of the company. Consequently, Watson argues that his termination claim must be deemed to have accrued on March 7, 1997. However, Watson ignores that in Bouman, the plaintiff's failure to be promoted had not been inevitable because (1) she was on the promotion list, (2) she was at the top of the list when it expired, and (3) vacancies had occurred before the list expired to which she could have been promoted. Id. at 1217. Thus, in Bouman, the plaintiff's potential promotion was not based on mere speculation. By contrast, Watson's contention that his removal from the Account Executive position was not an inevitable result of Gagnon's letter rests on pure speculation. Under these circumstances, Watson's case is more analogous to Ricks than Bouman, since the professor in Ricks relied on mere speculation that his internal grievance concerning the tenure decision would be successful. See also Bronze

9

Shields Inc. v. New Jersey Dep't Civil Serv., 667 F.2d 1074, 1080-84 (3d Cir. 1981) (when plaintif fs challenged legality of hiring examination, claim accrued when they r eceived notice that they had failed the examination and wer e not on the hiring roster, not when roster expired).

Therefore, we agree with the District Court that Watson's claim centered on his termination fr om the Account Executive position, and that Gagnon's February 1997 letter clearly informed Watson of his dischar ge from that position. The letter stated that "as of January 1, 1997 you are no longer in the Account Executive position." Consequently, pursuant to Ricks, the District Court corr ectly held that Watson's termination claim accrued on February 4, 1997, the date he received Gagnon's letter. As a result, Watson's discrimination discharge claim is untimely.

IV.

Watson also seeks review of his claim that Kodak unlawfully compensated him at a lower rate than similarly situated white employees. The District Court did not discuss this issue in its initial summary judgment decision. However, the Court did address the issue in ruling on Watson's motion for reconsideration. First, it declared that "all of Watson's claims related to any Kodak decision about which he was notified on February 4, 1997 ar e time-barred." Second, the Court held that "[a] reasonable reading of" his December 31, 1997 EEOC discrimination charge "does not lead to a conclusion that he was complaining about race discrimination in his rate of pay." The Court also concluded that its prior grant of summary judgment in favor of Kodak on this issue was proper because Watson "presented no evidence on summary judgment that suggests that Kodak engaged in some conduct that might qualify as a continuing violation."

Even assuming that Watson presented a timely unlawful compensation claim to the EEOC, the District Court's ruling on this issue must be affirmed because Watson failed to identify any evidence that he was compensated at a lower rate than similarly situated employees, or that this alleged disparate compensation continued long enough to

10

have rendered his December 31, 1997 EEOC charge timely.
For example, he failed to identify through extrinsic evidence
his pay rate, or those of comparable employees, and he
provided no evidence of the last date he r eceived a
paycheck. Although Watson filed an affidavit to support his
opposition to Kodak's summary judgment motion, he
makes no reference to an unlawful compensation claim nor
does he aver any facts to support it. Therefor e, since
Watson failed to make the requir ed evidentiary showing to
sustain his unlawful compensation claim, the District Court
properly entered summary judgment. See  Fed. R. Civ. P.
56(e). A party's failure to make a showing that is "sufficient
to establish the existence of an element essential to that
party's case, and on which that party will bear the burden
of proof at trial" mandates the entry of summary judgment.
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also
J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531
(3d Cir. 1990).

V.

For all the reasons set forth above, we will affirm the
District Court's order.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

11