

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-25-2003

# Thompson v. Gen Elec Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3892

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Thompson v. Gen Elec Co" (2003). *2003 Decisions.* Paper 94.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/94

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3892
_____

JOYCE A. THOMPSON,

Appellant

v.

GENERAL ELECTRIC COMPANY


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable Sean J. McLaughlin
(D.C. Civil No. 00-cv-00388)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 24, 2003

Before: ALITO, FUENTES and BECKER, Circuit Judges.

(Opinion Filed: November 24, 2003)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

The United States District Court for the Western District of Pennsylvania held that Joyce A. Thompson ("Thompson") failed to timely file her claims of discrimination against her former employer, Appellant General Electric. Because we agree, we will affirm the Order of the District Court. We write solely for the parties, therefore our review of the factual background is limited to that which is necessary to inform our opinion today.

Thompson worked for General Electric from 1969 until 1996, serving in various positions with the General Electric Transportation Systems Division. After receiving a right to sue letter from the Equal Employment Opportunity Commission (EEOC) dated September 9, 2000, Thompson filed a civil action in the District Court on December 22, 2000, asserting violations of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act, and the Pennsylvania Human Rights Act (PHRA). In her complaint, Thompson alleged that the company failed to make good faith efforts to identify and provide her with reasonable accommodations for her disability (Thompson suffered from spine deterioration and chronic back pain due to a work-related injury), and ultimately fired her because of her disability and request for reasonable accommodations. Thompson also claimed that General Electric engaged in reverse race discrimination because the company refused to provide reasonable accommodations to her that were given to similarly-situated African-American employees; refused to honor work restrictions that were honored for similarly-situated African-American employees; and

2

forced Thompson to have back surgery in order to keep her job, but did not force similarly-situated African-American employees to do the same. Thompson had a discectomy on March 20, 1997, but was subsequently unable to return to work at General Electric.

The parties agree that Thompson's claims basically break down into two groups: the alleged discriminatory treatment by General Electric during Thompson's employment with the company, and the directive essentially telling Thompson to have back surgery or risk losing her job.

General Electric requested summary judgment in the District Court, contending that Thompson failed to file her claims of discrimination within the applicable federal and state time periods (300 days for her ADA and Title VII claims, 180 days for her claim under the PHRA). At a September 16, 2002 hearing in the District Court on Appellant's summary judgment motion, Thompson's attorney, William Taggart, admitted on the record that Thompson's claims of discrimination relating to her treatment at General Electric accrued on the last date she worked at the company, which was November 8, 1996. Taggart also confirmed that Thompson was informed by letter on November 13, 1996 of the company's proposition regarding surgery. The District Judge asked Taggart whether there was evidence that Thompson submitted anything in writing to the EEOC prior to November 15, 1997 (the date on a questionnaire Thompson submitted to the EEOC), and Taggart responded, "Although, I'm an advocate, I'm still bound by reality. And I think after much combing by both parties through the record, that it is correct based

3

on everything that came out in discovery." (Plaintiff's Revised Appendix Two, at 66.) Taggart also conceded that Thompson was not raising an equitable tolling claim with the District Court. (Id. at 71.)

Construing these facts in the light most favorable to Thompson, we conclude that the District Court properly granted summary judgment to General Electric and dismissed Thompson's claims as untimely. Assuming (and given the conflicting evidence in the record, this truly is an assumption) that Thompson communicated her grievances to the EEOC by November 15, 1997, she was still outside the statutory period for all of her claims. The Civil Rights Act provides that a charge of discrimination must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). A complaint under the Pennsylvania Human Rights Act must be filed within 180 days of the alleged act of discrimination. 43 P.S. § 959(h). Therefore, the conduct of which Thompson complains must have occurred before January 20, 1997 (for her federal claims) or May 20, 1997 (for her PHRA claim) in order to be considered timely. Because the alleged discrimination occurred before these dates, the District Court correctly held that Thompson's claims were time-barred.

Thompson contends here, as she did in the District Court, that November 13, 1996 (when she received the company's directive to have surgery) should not be considered the accrual date for the second group of claims. Rather, she urges that the claims accrued when she actually decided to have the discectomy (apparently in February 1997). The District Court properly rejected this position, relying on the well-established principle that

4

the statute of limitations begins to run at the time that an employee receives notice of an adverse employment action. See Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Watson v. Eastman Kodak Co., 235 F.3d 851, 852-53 (3d Cir. 2000) (noting that the Supreme Court held in Ricks that "an adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that action and termination is a delayed but inevitable result.").

As of November 13, 1996, there were strong indications that absent surgery, Thompson was never coming back to General Electric. On the record before us, drawing all reasonable inferences in favor of Thompson, as we must, her claim that she might have returned to work is speculative. We have held that speculation does not prevent the statute of limitations from running. In Watson, for example, the plaintiff (an account executive at Kodak) was informed in February that he would be terminated in March unless he found another position within the company. Watson, 235 F.3d at 853. Watson did not, and was fired. This Court held that "the relevant date from which to measure the timeliness of Watson's discrimination claim is the date on which he was removed from the Account Executive position, and . . . we conclude that the mere speculative possibility of continued employment does not alter Rick's date of notification rule." Id. Likewise, in this case, Thompson's termination seemed fairly certain, pending only the speculative outcome of her surgery.

Thompson argues on appeal that she communicated by telephone with an EEOC officer in June and August 1997 (within the statutory period) and submitted intake documents to the EEOC by mid-August 1997. She argues that the EEOC misplaced her file, thereby causing the delay, and that the court should relate her later written communications back to those earlier dates. The record does not support Thompson's assertions, however, and Thompson's own attorney conceded that she did not communicate with the EEOC in writing before November 15, 1997.

Finally, because Taggart explicitly informed the District Court that Thompson was not asserting an equitable tolling claim, this argument was waived and may not be raised here. Accordingly, for the reasons stated above, we affirm the judgment of the District Court.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

By the Court,

    /s/ Julio M. Fuentes
Circuit Judge

6