

Villanova University School of Law
Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2006

# Evans v. Port Auth

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4062

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Evans v. Port Auth" (2006). *2006 Decisions.* Paper 1546.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1546

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 04-4062

MEREDITH EVANS and TYRONE BALLON, Appellants

v.

PORT AUTHORITY TRANS-HUDSON, CORPORATION, PORT AUTHORITY OF
NEW YORK AND NEW JERSEY, CRUZ C. RUSSEL, JAMES F. CONKLIN,
MICHAEL DEPALLO, EUGENE KOWALSKI, HOWARD CONKLING, ROBERT
ZDANOWICZ, KAREN MATTHEWS, GLENDA HUTCHINSON, SHARON SLATER

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 99-CV-0 5901)
District Judge: The Honorable John W. Bissell

_____

Submitted Under Third Circuit LAR 34.1(a)
November 16, 2005

Before: BARRY and AMBRO, <u>Circuit</u> <u>Judges</u>.
and POLLAK,[*] <u>District</u> <u>Judge</u>.

(Filed: February 23, 2006)

OPINION OF THE COURT

_____

POLLAK, District Judge.

_____

[*]Honorable Louis H. Pollak, Senior District Judge for the United States District
Court of the Eastern District of Pennsylvania, sitting by designation.

In a suit brought in the New Jersey Superior Court on November 16, 1999 and thereafter removed to the United States District Court for New Jersey, Meredith Evans and Tyrone Ballon allege that the Port Authority Trans-Hudson Corp. ("PATH"), the Port Authority of New York and New Jersey ("Port Authority"), and various employees of these entities denied Evans and Ballon promotions on the basis of race in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 2000e et seq.[1]  In addition to these claims brought in response to the adverse promotion decisions, Evans claimed his administrative discipline for piloting a train that ran a red light was impermissible retaliation in violation of §§ 1981 and 1983.  Plaintiffs also brought claims under the New Jersey Law Against Discrimination ("NJLAD"), New Jersey Stat. Ann. § 10:5-1 to 10:6-2, but those claims were dismissed and are not part of this appeal.  Defendants filed a motion for summary judgment on all plaintiffs' allegations.

The District Court concluded that a two-year statute of limitations applies to plaintiffs' §§ 1981 and 1983 claims.  The District Court also determined that the evidence did not support plaintiffs' "continuing violation" theory, which would have started the limitations period at the time of the last alleged discriminatory act as opposed to the first.

---

[1] Though plaintiffs in their pleadings indicate that a Title VII claim may be brought against all defendants, Title VII only addresses acts by the "employer."  *See* 42 U.S.C. § 2000e-2. PATH and the Port Authority are the only defendants in this suit that may be classified as "employers."

2

Consequently, the Court did not consider §§ 1981 and 1983 claims founded on any event that occurred prior to November 17, 1997. As for the Title VII claims, the District Court concluded that they had to have been filed with the Equal Employment Opportunity Commission ("EEOC") no later than 300 days following the allegedly discriminatory event.[2] Evans filed his first intake questionnaire with the EEOC on February 6, 1998. Ballon filed his EEOC intake questionnaire on February 10, 2000. Accordingly, acts alleged to be discriminatory under Title VII occurring prior to April 12, 1997 for Evans and April 16, 1999 for Ballon were not considered by the District Court.

Turning to the substance of the plaintiffs' claims based on events that fell within the relevant statutory limitations periods, the District Court concluded that there was no evidence of racially discriminatory intent in the grading of Evans's and Ballon's written and oral promotion examinations. Therefore, the District Court dismissed on summary judgment the §§ 1981 and 1983 and Title VII claims based on those promotion decisions.[3] The District Court also found no evidence to support Evans's additional §§ 1981 and

---

[2]The District Court noted that some ambiguity exists as to whether a 180 or 300 day limitations period applies, but the Court concluded that its analysis would be unaffected under either limitations period, so it did not undertake to resolve the ambiguity.

[3] In addition to plaintiffs' primary claims of racial discrimination in promotions, Evans and Ballon also claimed that there was a general atmosphere of racial animus as demonstrated by use of "nigger" by unidentified PATH employees as well as the relatively few African-Americans then holding management level positions at PATH. The District Court concluded that these generalized allegations were not relevant to plaintiffs' promotion claims.

1983 claims that – for sending two letters claiming discrimination at PATH – defendants retaliated against him by finding him guilty of piloting a train that ran a red light. Accordingly, the District Court dismissed plaintiffs' action in its entirety.

This timely appeal followed. For the reasons now to be presented, we affirm the judgment of the District Court.

I

Evans and Ballon are African-American males who are employed at PATH. PATH – a wholly owned subsidiary of the Port Authority – operates a public rapid transit system that runs between New York City and several cities in northern New Jersey. Both Evans and Ballon work in the "Transportation Division" of PATH. Evans was hired in 1982 as a track maintenance worker and was promoted in 1986 to the position of engineer, which he continues to hold today. Ballon was hired in 1988 as a station attendant, and today is a conductor, a position he attained in 1991.

A.    Evans's Allegations

1.    Sections 1981 and 1983

The District Court only considered Evans's §§ 1981 and 1983 claims based on promotion denials occurring after November 16, 1997. After this date, Evans was denied a promotion twice – once in December of 1997 and once in July of 1999. The reason

4

given for Evans's December 1997 denial was that he failed a written examination that one must pass to be eligible for the Operations Examiner position for which Evans applied. He took the written Operations Examiner test in October 1997, and it consisted of 24 short-answer questions as well as one essay question. Evans did not answer four and one-half of the short-answer questions and half of the essay. These portions of the test accounted for about 20% of the total available points. The grader also took off additional points for completed but erroneous answers. Evans received a final score of 55.9% on the examination.[4] Evans's low score on the written examination was given by the promotion committee as the reason he was not eligible for the Operations Examiner position.

In July 1999, Evans attempted to apply for the Operations Examiner position but was told that he could not because he was still on probation for piloting a train that ran a red light. He had been found guilty of this infraction in October of 1998;[5] this resulted in four weeks' suspension without pay, coupled with a year's probation that rendered Evans ineligible to apply for any promotions until October of 1999.[6]

Along with the §§ 1981 and 1983 claims based on the promotion denials, Evans

---

[4] On the record before this Court it is not clear exactly what was the passing grade for the October 1997 examination, but it is clear that the passing score was higher than 55.9%. Robert Zdanowicz – the scorer of Evans's examination – testified that the passing grade was usually 70% but that sometimes a slight curve was used. (App. 371a.)

[5]Evans unsuccessfully argued at that disciplinary hearing that he directed the driver of the train to stop for the light, but that the driver did not heed his directions.

[6] Three weeks of Evans's four-week suspension were held in abeyance contingent on Evans's successfully completing the probationary period without incident (which he did), so Evans actually was only suspended for one week.

also advanced a retaliation claim under both §§ 1981 and 1983. He contended that the discipline imposed in October of 1998 was retaliation for making two written complaints of racial discrimination. The first complaint was lodged with James Conklin, PATH's Superintendent of Transportation, in April of 1997 after Evans failed the Operations Examiner test for a second time.[7] The second complaint was a letter sent to Congressman (as he then was) Robert Menendez in January of 1998 after Evans learned in December of 1997 that a prior application for promotion to Operations Examiner had been denied.[8]

### 2. Title VII

The District Court also reviewed Evans's Title VII claims occurring after May 4, 1997. Evans based these claims on the adverse promotion decisions made in December 1997 and July 1999.

### B. Ballon's Allegations

Ballon's allegations are similar to those made by Evans.[9] Ballon applied for a

---

[7] Evans's challenge to that promotion denial was not considered by the District Court since it was one of the pre-November 17, 1997 events held by the District Court to be barred by the statute of limitations.

[8] The letter to Congressman Menendez was later forwarded to Congressman Donald Payne (N.J.).

[9] Though the legal claims of Evans and Ballon are legally identical, the underlying record in Ballon's case is more sparse. PATH asserts that much of the evidence bearing on Ballon's charges was housed in the World Trade Center when those buildings were destroyed in 2001.

6

number of promotions that he claimed he did not get because of racial discrimination. The District Court considered Ballon's §§ 1981 and 1983 claims based on events occurring after November 16, 1997. The District Court considered Ballon's Title VII claims rooted in events occurring after April 11, 1999. Under each of these time periods, Ballon described only one relevant event – the June 1999 rejection of Ballon's application for the Train Dispatcher position. This position required that applicants take a written examination, which would be followed by an oral examination for those candidates that passed the written examination. Ballon began the process of applying for the Train Dispatcher position in May 1999 by taking the written portion of the examination. However, he was informed that he did not pass and that, consequently, he would not be eligible to take the follow-up oral examination.

## II

"We conduct plenary review of a grant of summary judgment, applying the same standard as the district court." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). The evidence is viewed in the light most favorable to the non-moving party. *Id*. A motion for summary judgment is properly granted if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R.

7

Civ. P. 56(c))). Should the moving party meet the initial burden of showing that there is no genuine issue of material fact, "the burden shifts to the non-moving party to set forth specific facts showing the existence of such an issue for trial." Fed. R. Civ. P. 56(e).

### III

At the outset, we consider whether all the claims brought by the plaintiffs fall within the relevant statute of limitations. Generally, the statute of limitations for claims brought in New Jersey under §§ 1981 and 1983 is two years. New Jersey Statutes Annotated § 2A:14-2.[10] *See Goodman v. Lukens Steel, Co.*, 482 U.S. 656, 661-62 (1987) (concluding that, when fixing the relevant limitations period for §§ 1981, 1982, and 1983, "federal courts should select the most appropriate or analogous state statute of limitations"); *see also Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir. 2001). In New Jersey, claims brought pursuant to Title VII must be filed with the EEOC "within 300 days after the alleged unlawful employment practice occurred." *Bihler v. Singer Co.*, 710 F.2d 96, 97 n.2 (3d Cir. 1983) ("Prospective [employment discrimination] plaintiffs have 300 days to file a charge with the EEOC in states that have a procedure for conciliation by state agencies, and 180 days to file if the allegedly discriminatory act took place in a state without such a parallel mechanism. New Jersey falls within the former category."

---

[10] New Jersey Statutes Annotated § 2A:14-2 provides, "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued[.]"

8

(internal citation omitted)); *see also Cardenas*, 269 F.3d at 255 n.2. In employment discrimination actions, the limitations period begins with the "time of the discriminatory act." *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992). However, where the discriminatory conduct constitutes a "continuing violation," "the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." *Id.*; *see also West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995) (applying a continuing violation theory to Title VII action).

We have articulated a test by which we may determine whether a series of alleged discriminatory acts should be perceived as a single, continuing violation or whether the series should be more properly understood as a string of discrete acts. *See Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91-92 (3d Cir. 1981). In *Jewett*, we stated that to show a continuing violation in the employment discrimination context, "the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's 'standard operating procedure.'" *Id.* (quoting *Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

Plaintiffs' evidence viewed in the most favorable light falls short of showing that race discrimination was "standard operating procedure" at PATH. African-American managers were involved in creating and implementing promotion protocols at PATH between 1994 and 1999. Moreover, during that same time period, African-American employees of PATH were promoted to management level positions. These facts weigh

9

heavily against a determination that race discrimination was standard operating procedure at PATH.[11]

Accordingly, we agree with the District Court that the acts complained of by plaintiffs as racially discriminatory do not amount to continuing violations. Since this complaint was initially filed on November 16, 1999, we think the District Court was correct in determining that only plaintiffs' §§ 1981 and 1983 claims based on events occurring after November 16, 1997 are reviewable. Therefore, only Ballon's May 1999 denial of promotion to Train Dispatcher may serve as a basis for his §§ 1981 and 1983 claims. And, since the only Title VII claims Ballon can pursue are those arising on and after April 11, 1999, the May 1999 denial of promotion is Ballon's only assertable Title VII claim. As to Evans's claims, we consider his §§ 1981 and 1983 claims only insofar as they are rooted in the events surrounding the December 1997 denial of Evans's application for Operations Examiner, the July 1999 denial of the opportunity to apply for the Operations Examiner position, and the October 1998 charge and punishment for the piloting violation. We will consider Evans's Title VII claims arising after May 4, 1997, which include the December 1997 and July 1999 promotion denials.

IV

---

[11] We do not accord significant weight to the plaintiffs' general allegations that their employment discrimination claims are supported by circumstantial evidence of use of racially charged words by PATH employees because this evidence constitutes "[s]tray remarks by non-decisionmakers" with unknown temporal relevance to the plaintiffs' promotion efforts. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992).

The District Court concluded that the reviewable §§ 1981 and 1983 and Title VII claims failed because no reasonable fact-finder could find that the evidence supports either Ballon's claim or Evans's claim of adverse employment decisions made due to racial animus, or Evans's claim of retaliation. We agree.

A.      Section 1981 and Title VII

In order for a plaintiff to succeed on a claim under either § 1981 or Title VII, he must start by making out a "minimal prima facie case." A "minimal prima facie case" is stated when the plaintiff shows that he is a member of a protected class, was qualified for the employment position, and was not selected for that position "'under circumstances that give rise to an inference of unlawful discrimination.'" *Hampton v. Borough of Tinton Falls Police Dept.*, 93 F.3d 107, 112 (3d Cir. 1996) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 436, 499 (3d Cir. 1999).

Here, neither of the plaintiffs established a "minimal prima facie case" with respect to promotion decisions made within the relevant limitations periods; there is no evidence of record that would support a finding that either of the plaintiffs was qualified for the promotions at issue.

1.      Evans

11

Evans received a score of 55.9% – which was below the passing grade[12] – on the October 7, 1997 examination that led to the December 1997 promotion denial. Because many answers were not completed and others were incorrect, we can find no reason to challenge defendants' assertion that this score accurately reflects Evans's performance on the examination. Nor can we find evidence which would indicate that the passing score used in evaluating the examination was somehow inappropriate. Therefore, both the § 1981 and Title VII claims based on the December 1997 promotion denial fail.

Also unavailing are Evans's § 1981 and Title VII claims based on the refusal of PATH management to allow Evans to apply for the Operations Examiner position in July 1999 while he was still on probation for the October 1998 piloting infraction. Evans presents no evidence that denying an employee the opportunity to apply for a promotion while on probation is somehow inconsistent with standard PATH practice. Accordingly, we reject Evans's claim that PATH's 1999 refusal to allow Evans to apply for the position of Operations Examiner constituted evidence of a violation of § 1981 and Title VII.

We also agree with the District Court's dismissal of Evans's § 1981 retaliation claim. That claim was predicated on the contention that the discipline imposed in October 1998 for piloting a train that ran a red light constituted retaliation for two letters claiming racial discrimination at PATH he sent in mid-1997 and early-1998 – letters of

_____

[12] *See supra* note 4.

grievance alleged to be protected activity. Among the elements that a plaintiff must establish in order to prevail on a retaliation claim under § 1981 is that "the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996) (citation omitted). Evans takes issue with the finding that he was partially responsible for the running of the red light, but the record evidence does not support his claim that this adverse finding was unwarranted. Evans has also offered no evidence that he was disciplined in a manner incongruent with others found guilty of piloting violations. Because he has not produced evidence that these management decisions were unsupported – or, alternatively, that they were rooted in some improper motive – Evans's § 1981 retaliation claim fails.[13]

2.    Ballon

Ballon also failed to make out a prima facie case under § 1981 or Title VII because there is nothing in the record to suggest that PATH administrators impermissibly failed Ballon when he took the May 1999 written examination for the position of Train Dispatcher. Ballon's examination paper was lost in the September 11, 2001 destruction of the World Trade Center, but Ballon has offered no relevant evidence tending to show

---

[13] Evans also appears to bring a claim that the decision to deny him the opportunity to take a promotion examination during the period of his year probation was – if not motivated by racial animus – retaliatory. However, as we noted in the context of the racial animus charge, Evans has offered no evidence that this denial was inappropriate.

13

that he would have passed the examination but for race discrimination.

3.      Evans and Ballon

Both plaintiffs argue that the examinations that they were required to take were overly subjective and, as a result, susceptible to the racial prejudices of the graders. However, with respect to the examinations in the record, there is no evidence that pernicious influences guided the grading decisions.  Moreover, plaintiffs' disparate impact evidence is similarly unavailing because plaintiffs have not shown that a qualified pool of African-Americans were routinely applying – and being rejected – for  managerial promotions.  In sum, neither Evans nor Ballon made out a prima facie case of discrimination under either Title VII or § 1981.

B.      Section 1983

Plaintiffs bringing a § 1983 racial discrimination claim must make a showing similar to, but distinct from, the showing required for race discrimination claims brought under either § 1981 or Title VII.  To make out their claims under § 1983, Evans and Ballon needed to show that they were purposefully discriminated against on the basis of race. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Claims that supervisors directly or indirectly participated in alleged discriminatory behavior must be supported by evidence of direct discrimination by the supervisor or evidence that the supervisor possessed actual knowledge of and/or acquiesced in the discriminatory

14

behavior of others. *Id.* As with the § 1981 and Title VII claims, the § 1983 promotion claims are also unavailing because plaintiffs are unable to show that they were not promoted as a result of race discrimination.

Evans's § 1983 claim that he was denied his constitutional rights to free speech when he was allegedly retaliated against for sending the two letters claiming discrimination fails for the same reason the § 1981 retaliation claim failed – i.e., there is no evidence that the imposition of administrative discipline on Evans for running a red light was improper.

## Conclusion

Our review of the record establishes that Evans's and Ballon's allegations of employment discrimination fueled by racial animus, and Evans's associated claim of retaliation for complaining of discrimination, are unsupported. Accordingly, we affirm the judgment of the District Court.