BLD-131                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4062
_____

BENJAMIN VELASQUEZ,
                                        Appellant

v.

DAVID DIGUGLIELMO; JOHN K. MURRAY; A.S. WILLIAMSON;
MICHAEL A. LORENZO; MR. RADLE; THOMAS DOHMAN;
WILLIAM BANTA; MYRON STANISHEFSKI; RICHARD STEFANIC;
FELIPE ARIAS; TIMOTHY I. MARK; JEFFREY A. BEARD;
CRNP HOLLY SCHWEITZER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:09-cv-00517
District Judge:  Honorable Juan R. Sanchez
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 22, 2013

Before: SCIRICA, HARDIMAN and GREENAWAY, JR, Circuit Judges

(Opinion filed: March 19, 2013)
_____

OPINION
_____

PER CURIAM

1

Benjamin Velasquez, a Pennsylvania state inmate proceeding pro se, appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting Appellees' motions for summary judgment. Because this appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

## I.

At all times relevant to his complaint, Velasquez was incarcerated at SCI Graterford in Graterford, Pennsylvania. He suffers from anxiety and insomnia for which he has been prescribed Klonopin and other similar medications intermittently over the past ten years. In 2007, a doctor or psychologist at SCI Graterford discontinued his Klonopin prescription.

In December 2010, Velasquez discussed the renewal of his anxiety and insomnia medication with Schweitzer, a Certified Registered Nurse Practitioner. Schweitzer prescribed Remeron; however, Velasquez experienced negative side effects. He complained to Schweitzer, who arranged for him to meet with psychiatrist Dr. Fishstein.

On January 10, 2008, Velasquez saw Schweitzer in the dispensary area, told her that he was still experiencing side effects, and requested new medication. He asked her who her boss was and mentioned that he was going to write to her boss because he was not being treated for his medical condition. Subsequently, Schweitzer completed an incident report claiming that Velasquez had engaged in inappropriate contact. Five days

later, Schweitzer reviewed Velasquez's chart and discussed her security and medication concerns with Dr. Polmueller, the head of psychiatric services. She expressed a concern that Velasquez had become verbally intimidating when she declined to discuss his medication issues on January 10th.

On January 16th, the Psychiatric Review Team ("PRT") held a meeting to review Velasquez's need for psychiatric care. At this meeting, the PRT decided to remove Velasquez from the mental health roster. The PRT also determined that it was unnecessary to treat his insomnia with medication. On February 11, 2008, Licensed Psychology Manager Robert Dromboski informed Velasquez that he had been removed from the mental health roster and that the medical department would be coordinating all of his care. Afterwards, Dromboski sent an email to Schweitzer reporting on his meeting with Velasquez.

On February 18, Velasquez filed an administrative grievance regarding officials' failure to treat his insomnia and other medical problems. The next day, Schweitzer sent a letter to William Radle, the lieutenant assigned to internal security, describing the fear she felt during her encounter with Velasquez and noting her continued safety concerns because of the PRT's delay in enacting its decision regarding his mental health care. She requested a separation from Velasquez because of her fear. On February 20, Radle placed Velasquez in administrative custody in the Restricted Housing Unit ("RHU") pending his investigation of Schweitzer's claims.

The Program Review Committee ("PRC") saw Velasquez on February 27 and decided to return him to the general population the following day. Deputy Superintendant Murray notified Schweitzer of this decision through email. Velasquez subsequently withdrew his February 18 grievance.

On February 28, Schweitzer responded to the email regarding the PRC's decision. In her email, she clarified that it was not just Velasquez's inappropriate demands for medication that caused her concern, but also his behavior, which she perceived as threatening. She and Dr. Fishstein met with Murray and described encounters with Velasquez where he was intimidating and threatening. Afterwards, Murray informed Radle that he was placing Velasquez in the RHU because he presented a "danger to himself or others." Murray also believed a separation was warranted.

After being returned to the RHU, Velasquez experienced a delay in receiving his medications. The PRC reviewed his placement on March 5 and continued his administrative custody status, noting that a transfer petition was pending. On March 9, Dr. Arias visited Velasquez, and Velasquez requested medication for insomnia. The next day, Velasquez's appeal of his placement was denied, and the denial was upheld through the appeal process.

On March 19, Dr. Stefanic addressed Velasquez's medical needs with regards to, inter alia, his insomnia. He ordered Velasquez to attempt to obtain a natural sleep pattern because the mental health providers did not believe he had any mental health disorder

preventing him from sleeping. On April 9, Velasquez filed a grievance alleging that he was being denied treatment for insomnia. The grievance coordinator rejected it on the basis that this issue had been addressed by his withdrawn grievance. Velasquez's appeal was denied upon a finding that his health care issues had been addressed.

Velasquez appeared before the PRC on May 28, and the PRC continued his placement in the RHU. His appeals of this decision were subsequently denied. On May 29, Velasquez filed a grievance alleging that his placement in the RHU was in retaliation for his medical grievances and also violated his due process rights. However, this grievance was denied, and the denial was upheld through the appeal process.

On June 2, prison officials submitted a permanent transfer petition requesting that Velasquez be permanently transferred and separated from Schweitzer based upon a pattern of increasingly demanding and intimidating behavior. The petition was approved on June 16, and Velasquez was transferred to SCI Huntingdon on June 22.

Velasquez filed a complaint pursuant to 42 U.S.C. § 1983 in February 2010.[1] Appellees filed motions to dismiss, which the District Court denied without prejudice. On October 25, 2010, the District Court ordered Velasquez to file an amended complaint alleging each defendant's personal involvement, and Velasquez filed his amended complaint in December 2010. Drs. Arias and Stefanic filed a motion to dismiss on

---

[1] Velazquez's original complaint asserted, inter alia, an Eighth Amendment claim for deliberate indifference based upon prison medical personnel's alleged failure to promptly

December 23, 2010, and Schweitzer filed a motion to dismiss on December 30, 2010.  On September 12, 2011, the District Court denied the motion to dismiss filed by the doctors and granted Schweitzer's motion in part, dismissing Velasquez's Eighth and Fourteenth Amendment claims against her with prejudice.  After conducting discovery, Appellees filed motions for summary judgment, which the District Court granted on October 1, 2012.  Velasquez timely filed this appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party."  Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  We may summarily affirm on any basis supported by the record if the appeal does not present a substantial question.  Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

discontinue his Trazodone prescription and adequately treat his resulting urologic issues.

Section 1983 provides private citizens with a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

Velasquez first alleges that Drs. Stefanic and Arias violated his Eighth Amendment rights by failing to treat him for anxiety and insomnia while he was in the RHU. He also contends that Dr. Stefanic violated his First Amendment rights by denying him medication for his insomnia in retaliation for his grievance and oral complaints about his medical care. However, we agree with the District Court that Velasquez failed to exhaust his administrative remedies with respect to these claims.

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust their administrative remedies before filing a suit alleging specific acts of unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a). A prisoner must exhaust these remedies "in the literal sense;" no further avenues in the prison's grievance process should be available. Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). "[I]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The Pennsylvania Department of Corrections' ("DOC") grievance system requires an inmate to first file a grievance with the facility grievance coordinator. See Pa. Dep't

_____

However, Velasquez did not assert this claim in his amended complaint.

of Corr. Policy Statement, DC-ADM 804, Part IV.A.8.  The inmate may appeal the coordinator's decision to the facility manager, and then may file a final appeal to the Secretary's office.  See id. at Part IV.C.1, 2 and Part IV.D.1.  Here, the record reflects that Velasquez withdrew his first grievance, did not file a final appeal of the denial of his second grievance, and only raised issues regarding his placement in administrative custody in his third grievance.  Therefore, he did not administratively exhaust his claims against Drs. Stefanic and Arias in accordance with DC-ADM 804, and the District Court properly granted summary judgment as to these claims.[2]

Velasquez next alleges that Appellees violated his First Amendment rights by placing him in administrative custody and transferring him to SCI Huntingdon in retaliation for his grievances about his medical care.  He also alleges that Schweitzer colluded in the retaliation by fabricating reports regarding her security concerns after her interaction with him on January 10, 2008.  To sustain a retaliation claim under § 1983, an inmate must demonstrate that (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse response.  See Carter v. McGrady, 292 F.3d 152,

---

[2] We further agree with the District Court that Velasquez did not exhaust his administrative remedies by mailing a letter to Secretary Beard regarding his concerns that he was not receiving adequate medical care for his insomnia.  Furthermore, Velasquez did not properly exhaust these claims by using the procedures set forth in Pa. Dep't of Corr. Policy Statement DC-ADM 802 to appeal the PRC's decision regarding his placement in the RHU.  DC-ADM 802 specifically governs challenges to administrative custody, and DC-ADM 804 remains applicable to challenges unrelated to custody status.

157, 58 (3d Cir. 2002); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). With respect to the causal link, if the prisoner makes a prima facie showing that his constitutionally protected conduct was a motivating factor in the decision to discipline, the defendant then has the burden of showing that the same disciplinary action would have been taken even without the protected activity. See Rauser, 241 F.3d at 334.

We agree with the District Court that Velasquez has not met his burden of demonstrating that his grievance submitted on February 18 was a substantial or motivating factor for placing him the RHU and transferring him to SCI Huntingdon.[3] The record indicates that Radle received Schweitzer's letter detailing her security concerns and requesting a separation from Velasquez before making the initial decision to place Velasquez in the RHU on February 20. Radle had no knowledge that Velasquez had filed a grievance when he removed him from the general population, and Velasquez has not provided any evidence to refute this assertion. Radle's affidavit also establishes that the procedure at SCI Graterford is to place the inmate in administrative custody pending an investigation into safety concerns raised by staff members, and Velasquez has not provided any evidence that this would not have occurred absent his grievance.

---

[3] Appellees did not dispute that Velasquez established the first two elements of a retaliation claim. Nevertheless, even if they had, his use of the grievance system qualifies as protected conduct, see Milhouse v. Carlson, 652 F.3d 371, 373-74 (3d Cir. 1981), and his RHU placement and transfer constitute sufficient adverse action. See Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) (holding that retaliation may be actionable even when the retaliatory action does not involve a liberty interest).

9

Furthermore, Deputy Superintendant Murray made the decision to return Velasquez to the RHU on February 29 after receiving additional information from Schweitzer regarding her reasons for her separation request and after receiving information from Dr. Fishstein detailing his concerns about Velasquez. When this decision was made, Velasquez had already withdrawn his February 18 grievance. Accordingly, his grievance cannot be considered a substantial motivating factor in Murray's decision; even so, Velasquez has not provided any evidence that Murray had any knowledge of this grievance.

Velasquez also failed to establish that Schweitzer's reports about her security concern were substantially motivated by his February 18 grievance because there is no evidence that she was aware of this grievance at any time before he filed his amended complaint. Furthermore, Velasquez himself admitted that the encounter with Schweitzer occurred and agreed with her description of the encounter. There is evidence that Schweitzer was aware of earlier complaints made by Velasquez and his family members, and certain informal, oral complaints to prison personnel have been held to constitute protected activity. See, e.g., Pearson v. Welborn, 471 F.3d 732, 740-41 (7th Cir. 2006). However, there is no evidence that Schweitzer was aware of the substance of these informal complaints; instead, the record indicates that Schweitzer's security requests were a culmination of her concerns she had before learning of Velasquez's complaints.

10

Accordingly, the District Court properly granted summary judgment to Appellees on Velasquez's claims of retaliation.

Velasquez next claims that DOC officials violated his Eighth Amendment rights by being deliberately indifferent to his need for treatment for insomnia. Correctional officials cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (non-medical prison officials will not be charged with deliberate indifference absent a reason to believe or actual knowledge that medical staff are mistreating a prisoner). Here, Velasquez did receive medical treatment for his insomnia; therefore, the District Court properly granted summary judgment to Appellees on this claim.

Finally, we agree that Velasquez's due process claims are meritless. First, Velasquez's transfer did not violate his due process rights because he has no constitutionally protected liberty interest in prison transfers. See Olim v. Wakinekona, 461 U.S. 238, 245-48 (1983). Additionally, his four-month confinement in the RHU does not constitute an atypical or significant hardship. See Griffin v. Vaughn, 112 F.3d 706, 708 (3rd Cir. 1997) ("[E]xposure to the conditions of administrative custody for periods of as long as 15 months . . . did not deprive [the inmate] of a liberty interest and [] he was not entitled to procedural due process protection."); see also Sandin v. Conner, 515 U.S.

11

472, 484 (1995) (an inmate must demonstrate that the process used amounted to an

"atypical and significant hardship . . . in relation to the ordinary incidents of prison life.").

IV.

For the foregoing reasons, no substantial question is presented and we will affirm

the judgment of the District Court.[4] See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

---

[4] We have considered Velasquez's Eighth Amendment and due process claims against Schweitzer and conclude that the District Court properly dismissed them, as Velasquez failed to establish how Schweitzer was personally involved in the alleged denial of treatment for his insomnia and the decisions to place him in the RHU and then transfer him to SCI Huntingdon. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).