

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2006

# Ricciardi v. Ameriquest Mtg Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1409

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ricciardi v. Ameriquest Mtg Co" (2006). *2006 Decisions*. Paper 1746.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1746

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1409
_____

ALVIN RICCIARDI,

Appellant

v.

AMERIQUEST MORTGAGE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-02995)
District Judge:  Honorable James McGirr Kelly
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2005

Before:  RENDELL, FISHER and GREENBERG, *Circuit Judges.*

(Filed:    January 17, 2006)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

I.

Plaintiff Alvin Ricciardi appeals from two orders of the District Court:  (1) an

order granting summary judgment in favor of Defendant Ameriquest Mortgage Company

("Ameriquest") on Ricciardi's claim under the Equal Credit Opportunity Act ("ECOA"); and (2) an order, after a non-jury trial, finding in favor of Ameriquest on all of Ricciardi's remaining claims and on Ameriquest's counterclaim. Ricciardi raises three issues on appeal: (1) the District Court erred in finding no ECOA violation because Ameriquest violated the ECOA when it did not provide notice of less favorable terms until settlement; (2) the District Court's adverse credibility finding following trial was not supported by substantial evidence; and (3) Ricciardi proved at trial that Ameriquest overcharged him for title insurance, and therefore Ricciardi should have prevailed on his claim under the Truth in Lending Act ("TILA") and his claim that he was wrongfully denied the right to rescind the loan. For the reasons that follow, we will affirm.

## II.

Because we write only for the parties, we set forth only those facts that are necessary to our analysis. Ricciardi purchased a home on May 15, 2001. The purchase price was financed by a mortgage obtained from Cendant Mortgage Corporation. Subsequently, Ricciardi obtained a home equity loan on the property. On August 29, 2002, Ricciardi applied for a loan with Ameriquest in order to refinance the two existing

2

mortgages on the property.[1]  The parties dispute the precise terms discussed on that date.[2]

On August 30, 2002, Ameriquest mailed early disclosures to Ricciardi.  These disclosures included a preliminary Truth in Lending disclosure which identified a proposed loan in the amount of $180,578.00, at an adjustable annual rate of 9.487%.  Ricciardi has denied receiving these early disclosures.

Loan closing and settlement occurred on September 11, 2002.  At the closing, Ricciardi was presented with numerous documents, which he signed.  Among these documents was a "Borrower's Acknowledgment of Final Loan Terms" (the "acknowledgment").  This document lists the "original loan terms requested," which are identical to those contained in the early disclosures, as well as the "final loan terms."  The final loan terms provide for a loan of $171,193.94 at an annual percentage rate of 8.824%.  The signature of Ricciardi also appears on several documents specifying that Ricciardi made $4,500 per month as an internet advisor.  Ricciardi also signed a fixed rate note, which provided for fixed payments of $1,360.19 per month for thirty years.

---

[1]Ameriquest asserts that Ricciardi did not actually apply for a loan on this date, but instead only made an inquiry regarding the availability of credit.  Rather, Ameriquest asserts that Ricciardi did not actually submit a loan application until the closing.  For purposes of this opinion, we assume that Ricciardi did apply for a loan on August 29, 2002, because we do not believe this difference is critical in this case.

[2]A "Conversation Log" filled out by the representative of Ameriquest who spoke with Ricciardi on August 29, 2002, lists an "initial pricing" of the loan in the amount of $189,000 with an interest rate of 8% per annum and points of 3%.  Ricciardi insists that he was offered an interest rate of 7.25%.

On May 8, 2003, Ricciardi filed a complaint in the Eastern District of Pennsylvania, alleging violations of TILA, ECOA, and the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law. Ameriquest filed an answer and affirmative defenses on June 18, 2003, which also asserted a counterclaim for fraud arising out of Ricciardi's alleged misrepresentation of his monthly income.

After pleadings and discovery were closed, Ameriquest filed a motion in limine to preclude Ricciardi's ECOA claim. The motion in limine was assigned by the District Court to a magistrate judge. At oral argument the magistrate judge, with the consent of the parties, converted the motion in limine to a motion for summary judgment.[3] The magistrate judge filed a Report and Recommendation ("R&R"), which was adopted by the District Court. As a result, summary judgment was granted in favor of Ameriquest on the ECOA claim.

On July 19, 2004, a non-jury trial was held before the District Court to address the remaining claims and Ameriquest's counterclaim. On January 10, 2005, the District

---

[3]By leave of court, Ricciardi was permitted to submit documentation to supplement his response to the newly-converted motion for summary judgment on the ECOA count. In response, Ricciardi submitted a transcript of his deposition testimony, which the magistrate judge considered in preparing the R&R. Only after the R&R was prepared did he submit an affidavit denying that he was ever presented with the Borrower's Acknowledgment of Final Loan Terms. Pursuant to Eastern District of Pennsylvania Local Rule 72(IV)(c), the District Court properly refused to consider this affidavit when ruling on Ricciardi's objections to the R&R. Moreover, Ricciardi has not maintained on appeal that he did not sign the acknowledgment – in fact, his arguments, as well as the record, make clear that he now acknowledges that Ameriquest did present the acknowledgment to Ricciardi at closing and that he signed it.

Court issued a memorandum and order finding in favor of Ameriquest on all counts of the complaint and also on its counterclaim. This timely appeal followed.

III.

A.

Ricciardi argues that the District Court erred in granting summary judgment in favor of Ameriquest on Ricciardi's ECOA claim, because Ameriquest did not properly notify him of its counteroffer. We find no merit in Ricciardi's argument.

We exercise plenary review over the District Court's order granting summary judgment. *Bieregu v. Reno*, 59 F.3d 1445, 1449 (3d Cir. 1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Summary judgment was therefore appropriate if, as a matter of law, the acknowledgment which Ricciardi received and signed at the closing was a sufficient notice of a counteroffer under the ECOA's notice requirements. The ECOA requires that "within 30 days … after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691. The regulations contemplate three types of actions that a creditor can take in response to an application for credit: (1) an approval; (2) a counteroffer; or (3) an adverse action. 12 C.F.R. § 202.9. As defined by regulation, a counteroffer is "an offer to extend credit in a

5

different amount, or on other terms, than the terms requested." 12 C.F.R. § 202.2(c)(1)(i). Although the regulations require a lender to provide certain information in a notice of adverse action, 12 C.F.R. § 202.9(a)(2), there is no similar requirement regarding a notice of a counteroffer.

Ameriquest provided a notice of its counteroffer within thirty days of Ricciardi's completed application in the form of the acknowledgment. Ricciardi argues that this acknowledgment does not comply with ECOA for two reasons: (1) it was not provided to Ricciardi prior to the loan closing, but instead was provided at closing; and (2) it did not accurately express the initial terms of the offer.

Neither the text of the ECOA itself nor the text of relevant regulations require a notice of a counteroffer to be provided prior to the loan closing. We will not amend the statute or regulation by adding a requirement that the notice of a counteroffer must be provided prior to the loan closing. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (a court cannot alter the text of a statute to satisfy policy preferences of one party to the detriment of the other). As notice was provided to Ricciardi of Ameriquest's counteroffer within 30 days of Ameriquest's receipt of the completed application, the acknowledgment satisfies the requirements of the statute and regulation, and therefore is sufficient under the ECOA.

The case cited by Ricciardi, *Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444 (E.D. Pa. 1998), simply does not stand for the proposition that a notice of counteroffer must be submitted prior to the loan closing. Instead, the defendant in

6

*Newton* provided no notice of its counteroffer whatsoever. The defendant in *Newton* relied on two arguments – neither of which was the basis of the decision here – that were rejected by the district court: (1) the plaintiff had not completed an application for credit; and (2) the presence of the terms on the loan documentation itself was implicit notice of the counteroffer. Here, Ameriquest provided explicit notice of its counteroffer by providing Ricciardi with the acknowledgment. Thus, *Newton* is clearly distinguishable from the present case.

Ricciardi also argues that the notice of a counteroffer was insufficient because it did not contain the original loan terms that he and the Ameriquest representative discussed on August 29, 2002. This argument fails because neither the ECOA itself nor the regulations require any particular content in a notice of counteroffer. The acknowledgment provided clear notice that the final loan terms were different than those originally requested. This is true regardless of whether the acknowledgment properly identified the original requested terms. For these reasons, the District Court properly adopted the magistrate judge's R&R which granted summary judgment in favor of Ameriquest on Ricciardi's ECOA claim.

B.

Ricciardi's argument that the District Court erred in its adverse credibility finding is similarly without merit.  We review a finding that the testimony of a witness is not

credible for clear error.[4] *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 288 (3d Cir. 2005) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

The record is replete with support for the District Court's adverse credibility finding. Most importantly, Ricciardi initially testified that he never told Ameriquest that he was employed as an internet advisor at the salary of $4,500 per month,[5] and that he did not see or sign many of the documents presented at trial. On cross-examination, Ricciardi admitted to signing many of those very same documents, including several regarding Ricciardi's purported employment as an internet advisor. Based on these particular contradictions and on the record as a whole, there is no basis upon which to conclude that the District Court's adverse credibility determination was clear error.

## C.

Finally, we find no merit in Ricciardi's argument that Ameriquest overcharged him for title insurance, thereby violating TILA as a matter of law and giving him the right to rescind the loan. At trial, Ricciardi alleged that Ameriquest violated TILA in two ways: (1) by charging an unreasonable appraisal charge; and (2) by overcharging him for title insurance. We exercise plenary review over the District Court's conclusions of law

---

[4]Ricciardi's opening brief on appeal incorrectly stated that the appropriate standard of review was the substantial evidence standard.

[5]It is undisputed that during all time periods relevant to this litigation, Ricciardi was unemployed.

regarding Ricciardi's TILA claim. *See Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004).

At trial, the only evidence Ricciardi presented regarding the reasonableness of the $300 appraisal charge was the fact that he had previously been charged $150 by a different lender for what he considered a much more thorough appraisal. Given this lack of evidence as to reasonableness, the District Court was correct in determining that Ricciardi had failed to demonstrate the unreasonableness of the appraisal charge.

Ricciardi additionally argues that he was overcharged for title insurance because he was entitled to the refinance rate as set out by the Rate Manual.[6] Section 5.6 (Refinance and Substitution Loans) of the Rate Manual provides in pertinent part:

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate.[7]

Under the terms of Section 5.6 of the Rate Manual, a debtor is entitled to the refinance rate only if the previous mortgage was insured. As Ricciard presented no evidence prior to or at the loan closing that his previous mortgage was insured, Ameriquest appropriately charged him the default title insurance rate as published in the Rate Manual. For these

---

[6]In Pennsylvania, uniform title insurance charges have been established by the Title Insurance Rating Bureau of Pennsylvania. These uniform charges are published in a Rate Manual.

[7]The reissue rate (and thus the refinance rate) is substantially lower than the default rate which was charged to Ricciardi.

10

reasons, we find that the District Court properly concluded that there was no violation of TILA.

IV.

As we find no merit in any of Ricciardi's arguments, we will affirm the orders of the District Court.

11