In re Deborah A. MADERA, Debtor.

and

Deborah A. Madera and Michael Madera, Plaintiffs–Appellants

v.

Ameriquest Mortgage Company, Defendant–Appellee.

Civil Action No. 07–CV–1396.
Bankruptcy No. 06–13000.
Adversary No. 06–417.

United States District Court, E.D. Pennsylvania.

March 26, 2008.

As Amended May 8, 2008.

David A. Scholl, Esquire, for Appellants.

Sandhya M. Feltes, Esquire, for Appellee.

*OPINION*

JAMES KNOLL GARDNER, District Judge.

This matter is before the Court on the Notice of Appeal filed March 9, 2007 by plaintiffs-appellants Deborah A. Madera and Michael Madera from the February 27, 2007 Order of Chief United States Bankruptcy Judge Diane Weiss Sigmund of the United States Bankruptcy Court for the Eastern District of Pennsylvania which denied reconsideration of the bankruptcy court's February 8, 2007 Order and accompanying Memorandum Opinion granting summary judgment in favor of defendant-appellee Ameriquest Mortgage Company in an adversary proceeding.

By Order dated December 5, 2007 I scheduled an argument on this bankruptcy

appeal. On February 1, 2008 I conducted an oral argument on the appeal.[1] For the reasons expressed below, I affirm the decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania. Specifically, I affirm the February 8, 2007 Order of Chief Judge Sigmund granting summary judgment in favor of defendant-appellee and against plaintiffs-appellants in bankruptcy adversary number 06–417, and I affirm the February 27, 2007 Order denying reconsideration of the February 8, 2007 Order.[2]

## JURISDICTION

This Court has subject matter jurisdiction of this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

## FACTS

The following facts are gleaned from the February 8, 2007 Order and accompanying Memorandum Opinion of the bankruptcy court, as well as the uncontested facts contained in the Brief of Appellants filed May 14, 2007, the Brief of Appellees filed June 15, 2007 and the Reply Brief of Appellants filed July 2, 2007; as well as the uncontested statements of counsel at oral argument.

Appellants are co-owners of real property located at 401 Twin Streams Drive, Warminster, Bucks County, Pennsylvania. Appellants reside at this property. In January 2005 appellants obtained a loan from Option One Mortgage Company secured by a mortgage upon their home ("Option One loan"). Appellants utilized the Option One loan to pay off a prior mortgage. The Option One loan also provided appellants with a cash payout which they used to pay for their son's college tuition.

 Appellants do not recall the basic facts of the Option One loan such as the loan amount or interest rate. Neither appellant recalls whether they obtained title insurance with respect to the Option One loan. Moreover, prior to this bankruptcy

---

1. During this proceeding I also conducted an oral argument on the Motion of Appellants to Stay Sheriff's Sale of Their Home, which motion was filed January 28, 2008. By Order and accompanying Opinion dated February 7, 2008, appellants' motion to stay was denied.

2. Appellants filed their first Notice of Appeal on March 9, 2007. That appeal was limited to the bankruptcy court's disposition of this action (adversary number 06–417). By Amended Notice of Appeal dated March 12, 2007, however, appellants also sought to appeal adversary number 07–001. Adversary number 07–001 was a related adversary proceeding brought by plaintiffs Deborah A. Madera and Michael Madera against defendants Ameriquest Mortgage Company and AMC Mortgage Services, Inc.

The within bankruptcy appeal (which originally encompassed both adversary proceedings) was docketed in the United States District Court for the Eastern District of Pennsylvania on April 6, 2007. On April 9, 2007 Ameriquest Mortgage Company and AMC Mortgage Services, Inc. (as appellees) filed a Motion to Quash Appeal. The Motion to Quash Appeal sought dismissal of the appeal of adversary number 07–001 because the bankruptcy court had not entered a final appealable Order when the Amended Notice of Appeal was filed.

Appellants' response to Appellees' Motion to Quash Appeal was filed on April 23, 2007. Appellants' response indicated that they would withdraw their appeal with respect to adversary number 07–001 with the understanding that any appeal from a final Order in that adversary proceeding would be preserved. During oral argument conducted on February 1, 2008, I dismissed the appeal of adversary number 07–001 by mutual consent of the parties.

Accordingly, the underlying bankruptcy appeal in this matter is now limited to the final Order issued in adversary number 06–417. The parties involved in this appeal are plaintiffs-appellants Deborah A. Madera (the debtor) and Michael Madera (her husband) and appellee Ameriquest Mortgage Company.

appeal, appellants did not present any documentary evidence establishing the existence of title insurance for the Option One loan.[3]

Subsequently, appellants entered into a new loan transaction with appellee Ameriquest Mortgage Company on June 23, 2005 ("Ameriquest loan"). Appellants used the Ameriquest loan proceeds to satisfy their prior Option One loan. The Ameriqueset loan also provided appellants with a cash payout. Appellants made one payment under the Ameriquest loan.

## PROCEDURAL HISTORY

### Default and Foreclosure Judgment

On March 25, 2006 Deutsche Bank National Trust Company, as assignee of the loan, initiated foreclosure proceedings against appellants' home in the Court of Common Pleas of Bucks County, Pennsylvania. A default foreclosure judgment was entered against appellants on May 9, 2006. Based upon this foreclosure judgment, a sheriff's sale of the property was scheduled to take place on February 8, 2008.

Prior to oral argument on the within appeal, appellants had not moved in the Court of Common Pleas of Bucks County, Pennsylvania or the Superior Court of Pennsylvania to vacate or set aside the default judgment, to appeal the judgment, or to stay the impending sheriff's sale.

Appellants aver that they served a pro se Answer to the state court Complaint seeking foreclosure, which was docketed by the Bucks County Court of Common Pleas on April 24, 2006. Appellants contend that their Answer was not correctly docketed by the Bucks County court, but that it should have prevented the default and foreclosure judgment. However, appellee asserts that appellants were aware of the mortgage foreclosure action and never defended against it.

### Request for Information

On June 5, 2006 counsel for appellants, David A. Scholl, Esquire,[4] sent a letter to appellee alleging violations of federal and state law by appellee and asserting a right to rescind the Ameriquest loan. The letter purports to be a qualified written request pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(5)(e), seeking information regarding unpaid interest and escrow balances, monthly payments, and the method by which payments were credited by appellee.

3. Appendix A to the Brief of Appellants is an unsigned Settlement Statement on a form designed by the United States Department of Housing and Urban Development. Appellants contend that this is the settlement statement form from appellants' Option One loan transaction. This statement reflects, at item number 1108, that appellants were required to pay for title insurance in connection with repayment of the Option One loan.

Appellee vehemently opposes my consideration of this evidence. Appellee asserts that this evidence was never presented to the bankruptcy court and it is not part of the appellate record. Moreover, appellee argues that there is no evidence that this Settlement Statement, or any other evidence showing the existence of prior title insurance, was ever provided to appellee.

"[W]hen a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal." *In re Kaiser Group International, Inc.*, 399 F.3d 558, 565 (3d Cir.2005). Accordingly, because the Settlement Statement has not been made a part of the appellate record by the bankruptcy court, I will not consider it as part of this bankruptcy appeal. Moreover, attaching a document to a brief does not make it part of the record. *See Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 n. 2 (3d Cir.1988).

4. Attorney Scholl is a former Chief Judge of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

By letter dated August 2, 2006, appellee acknowledged receipt of appellants' letter. However, appellee avers that the letter was not received until July 27, 2006.

*Bankruptcy and Adversary Proceedings*

On July 19, 2006 appellant Deborah A. Madera filed a voluntary petition for Chapter 13 bankruptcy (case number 06–13000). On August 2, 2006 appellants Deborah A. Madera and Michael Madera commenced an adversary proceeding (adversary number 06–417) against appellee Ameriquest Mortgage Company.

The four-Count adversary Complaint contained the following claims:

(I) Ameriquest violated 15 U.S.C. § 1638(a) of the federal Truth–in–Lending Act ("TILA") by overcharging appellants for title insurance and failing to include the overcharge in their TILA "finance charge" disclosure statement, which violations entitle appellants to statutory recoupment of damages and costs against Ameriquest pursuant to 15 U.S.C. § 1640;

(II) Ameriquest's TILA disclosure violations entitle appellants to rescind the Ameriquest loan pursuant to 15 U.S.C. § 1635(b) and entitle appellants to statutory damages pursuant to 15 U.S.C. § 1640;

(III) Ameriquest failed to comply with 12 U.S.C. §§ 2605(e) and (f) of the Real Estate Settlement Procedures Act ("RESPA") by failing to respond to appellants' Qualified Written Request for rescission; and

(IV) Ameriquest violated 15 U.S.C. § 1691 of the Equal Credit Opportunity Act ("ECOA") by substituting different, less favorable loan terms without advising appellants on the date of settlement.

On August 22, 2006 appellee Ameriquest filed an Answer to the adversary Complaint. Thereafter, discovery commenced and the bankruptcy court set October 20, 2006 as the deadline to file pre-trial motions. On October 20, 2006, after discovery had concluded, Defendant Ameriquest Mortgage Company's Motion for Summary Judgment was filed. Appellee's motion sought summary judgment on all of appellants' claims.

On October 30, 2006 Plaintiff's Expedited Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment and for Permission to Amend Complaint was filed. This motion sought an extension to respond to appellee's summary judgment motion, sought a delay of the hearing on the summary judgment motion, and sought leave to file an Amended Complaint in adversary number 06–617.

In appellants' proposed Amended Complaint, appellants withdrew their ECOA claim. Appellants also withdrew their RESPA claim against appellee Ameriquest, and instead asserted the claim against AMC Mortgage Services, Inc. The Amended Complaint also asserted a new TILA disclosure violation based upon appellee's issuance of a one-week right-to-cancel notice. Finally, the Amended Complaint asserted a new claim against appellee for violations of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. §§ 201–7 and 201–2(4).

On November 28, 2006 a hearing on appellee's summary judgment motion and appellants' motion for leave to amend the Complaint was held before bankruptcy Chief Judge Sigmund.[5] At the hearing,

---

**5.** Although Chief Judge Sigmund refers to the proceeding as a hearing, it appears to have been solely an oral argument.

appellants withdrew their claim for damages and costs related to appellee's alleged violation of ECOA and Chief Judge Sigmund orally denied appellants' motion for leave to amend the adversary Complaint.

On February 8, 2007 Chief Judge Sigmund issued an Order and accompanying Mémorandum Opinion which granted appellee's motion for summary judgment on all remaining counts. As pertinent to this appeal, the bankruptcy court held that the *Rooker–Feldman* doctrine [6] barred appellants' claims for rescission in Count II. Chief Judge Sigmund also concluded that appellants had presented insufficient evidence to establish that they had obtained title insurance with the Option One loan or to demonstrate that appellee had notice of any such title insurance. Therefore, the bankruptcy court dismissed the TILA claim for damages in Count I.

Chief Judge Sigmund's February 8, 2007 Order and accompanying Memorandum Opinion also explained the bankruptcy court's rationale for denying appellants leave to amend their Complaint. The court held that the amendment was untimely because appellants were fully aware of the basis of the new claims and of their need to add an additional party before the conclusion of discovery. Chief Judge Sigmund also concluded that the proposed amendments would be futile.

On February 16, 2007 appellants filed Plaintiff's Motion Requesting Reconsideration of Memorandum Opinion and Order of February 8, 2007. Defendant Ameriquest Mortgage Company's Response in Opposition to Plaintiffs' Motion for Reconsideration was filed on February 19, 2007. By Order dated February 27, 2007, Chief Judge Sigmund denied appellants' motion for reconsideration. On March 9, 2007 appellants filed a Notice of Appeal from the bankruptcy court's February 27, 2007 Order.

## CONTENTIONS

### *Rooker–Feldman* Doctrine

#### *Appellants*

Appellants argue that in light of recent United States Supreme Court decisions, the bankruptcy court erred in sua sponte applying the *Rooker–Feldman* doctrine to bar their claim for rescission of the state court foreclosure default judgment.

Appellants contend that the TILA claim was not actually litigated in state court. Therefore, appellants argue that they cannot be considered both a party losing in state court and a party inviting review of the state court judgment.

Appellants further aver that recent precedents make clear that *Rooker–Feldman* is a doctrine of limited application. Appellants contend in that in order for the doctrine to apply, the state court decision must be afforded res judicata and given collateral estoppel effect under state law. Appellants argue that Pennsylvania default judgments do not have collateral estoppel or res judicata effects, and, therefore, *Rooker–Feldman* was incorrectly applied.

Appellants also contend that the "inextricably intertwined" portion of *Rooker–Feldman* has been overruled because the Supreme Court did not use it as a factor in

---

**6.** As most recently explained by the United States Supreme Court, the *Rooker–Feldman* doctrine is a statutory-based abstention doctrine which precludes federal trial courts from exercising appellate jurisdiction over final state-court judgments. *Lance v. Dennis,* 546 U.S. 459, 463, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059, 1064 (2006) (per curiam). *See Rooker v. Fidelity Trust Company,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

its recent decisions. Moreover, appellants argue that the state proceeding resulted in an in rem judgment, but did not adjudicate the rights of the parties as between one another (presumably referring to in personam proceedings). Because rescission is directed at the personal rights of the parties under their loan obligation, appellants assert that their rescission rights are unaffected by the judgment.

Appellants also insist that the state court judgment entered against them is susceptible to attack. Appellants aver that the procedural irregularities in state court, including its failure to take cognizance of their pro se Answer, were ignored by the bankruptcy court.

For the reasons expressed in the Discussion section, below, I reject appellants' contentions concerning the *Rooker–Feldman* doctrine.

### Appellee

Appellee argues that bankruptcy court's sua sponte invocation of the *Rooker–Feldman* doctrine was proper as the court is under a continuing obligation to investigate its subject matter jurisdiction over the matters before it. Appellee contends that numerous recent decisions within this jurisdiction have held that the *Rooker–Feldman* doctrine bars a borrower's claim for rescission under TILA where a state court foreclosure judgment has been entered against the borrower.

Specifically, appellee claims that the rescissionary relief requested by appellants is inextricably intertwined with the mortgage foreclosure judgment against appellants in the Court of Common Pleas of Bucks County, Pennsylvania. Appellee asserts that rescission of the state judgment would improperly prevent the state court from enforcing its own orders.

Appellee argues that appellants are seeking to have this court invalidate the state court judgment because of its procedural defects. Appellee avers that this is the precise type of action which is prohibited by *Rooker–Feldman.*

For the reasons expressed in the Discussion section, below, I accept appellee's contentions concerning the *Rooker–Feldman* doctrine.

### TILA Claim

#### Appellants

Appellants argue that the bankruptcy court erred in sua sponte deciding the substance of their TILA claim based on appellee's failure to disclose an overcharge of title insurance as part the finance charge disclosure for their loan. Appellants aver that appellee did not raise the issue of whether appellants had proven the presence of title insurance in its motion for summary judgment. Appellants assert that they could have easily demonstrated that they had title insurance on their prior loan if they had been aware that this issue was dispositive.

Appellants further argue that it was error for the bankruptcy court to grant summary judgment based upon whether appellants were aware of the title insurance overcharge and notified appellee of the overcharge.

Appellants do not dispute that they were charged the appropriate basic rate for title insurance on their loan and that the applicable provisions of the Manual of Title Insurance Rating Bureau of Pennsylvania govern the title insurance rates in this case.

Pursuant to section 5.6 of the manual, appellants contend that they were entitled to the refinance rate, and did not have an affirmative duty to demonstrate their entitlement to the refinance rate, because they had prior title insurance with their Option One loan. Appellants argue that the reissue rate has an evidentiary burden which

is absent from the refinance rate. Appellants assert that the bankruptcy court confused the reissue rate provision with that of the refinance rate, and improperly placed the burden of proof on appellants to demonstrate the existence of prior title insurance.

Appellants further argue that it is against public policy to require the general public to be informed of the rate structures of title insurance. Appellants contend that borrowers are not likely to know about their eligibility for a reduced rate whereas the lender is likely to know of the borrower's eligibility. Moreover, appellants assert that mere knowledge that individuals like the appellants had undertaken loans which were likely to require title insurance should provide sufficient notice to lenders and trigger an obligation to provide borrowers with the lower rate.

Appellants contend that they properly rebutted appellee's factual averments by offering an affidavit that in light of what appellants now know, they were entitled to a lower rate. Appellants also argue that their expert affidavit makes clear that irrespective of what appellants told or did not tell appellee about their prior coverage, they were entitled to the lower rate.

For the reasons expressed in the Discussion section, below, I reject appellants' contentions concerning their TILA claim.

### Appellee

Appellee claims that appellants' TILA claim was properly dismissed by the bankruptcy court for three reasons: (1) TILA expressly excludes the cost of title insurance from the "finance charge" (as used in the mandatory disclosure statement); appellants were not overcharged for title insurance because they were not entitled to a discounted reissue or refinance rate as a result of their failure to provide proof of a prior title insurance policy before or at loan closing; and (3) the title insurance charge was reasonable, and therefore no portion of the charge should have been included in the "finance charge" disclosure.

Appellee avers that there is abundant authority holding that under TILA the burden of showing the existence of prior title insurance is allocated to the borrower. Appellee further contends that the record is clear that appellants failed to support their TILA claim with sufficient evidence that they were aware that they had prior title insurance or notified Ameriquest of this fact.

Appellee asserts that appellants' argument that they did not know that the existence of title insurance was an issue is disingenuous. Appellee avers that the appellants were each questioned at length at their depositions about this issue. Moreover, appellee claims that appellants' counsel has tried numerous cases where this issue was directly litigated.

For the reasons expressed in the Discussion section, below, I accept appellee's contentions concerning appellants' TILA claim.

### Amendment of Complaint

### Appellants

Appellants assert that the bankruptcy court abused its discretion by denying appellants' motion to amend their Complaint. Appellants aver that the delay in seeking amendment was less than three months from the time the adversary proceeding was filed and that the motion was filed within one week from the time that appellee filed its motion for summary judgment (triggering the need to amend). Appellants contend that there is no suggestion that their actions were tactical, that the delay was undue or that there was any bad faith.

Appellants concede that the motion to amend was filed ten days after the time by

which all motions were required to be filed. However, appellants claim that because Ameriquest filed its motion for summary judgment on the last day to file pretrial motions, appellants could not file any motions responsive to the summary judgment motion within the deadline period. Moreover, because no trial date had been set by the bankruptcy court, appellants contend that the amendment would not have disrupted any trial proceedings.

Appellants argue that their amended complaint was not futile. Appellants contend that the bankruptcy court's finding of futility was generally premised on its application of *Rooker–Feldman,* which should be reversed for the reasons explained in their brief. Moreover, appellants claim that the bankruptcy court erred in concluding that misrepresentations in appellee's loan terms and appellee's failure to provide notice of the right to rescind did not constitute entitlement to damages under TILA and Pennsylvania law.

For the reasons expressed in the Discussion section, below, I reject appellants' contentions concerning amendment of their adversary Complaint.

### Appellee

Appellee asserts that the bankruptcy court correctly denied appellants' motion to amend their Complaint and did not abuse its discretion. Appellee avers that the bankruptcy court's denial of the motion to amend became moot because the identical Complaint was filed in order to commence a second adversary proceeding within Deborah A. Madera's Chapter 13 bankruptcy action.

Appellee further contends that the motion was untimely because appellants did not seek to amend their Complaint until after discovery was concluded and appellee's motion for summary judgment had been filed. Appellee claims that the motion to amend attempted to add a new defendant which had not been subject to discovery. Appellee argues that appellants were aware of the "new" claims and the need to add an additional party far in advance of the filing of the motion to amend.

Appellee asserts that appellants offered no new evidence in support of their motion to amend. Appellee further contends that courts are reluctant to allow plaintiffs to add new theories of liability after summary judgment arguments have been completed. Thus, under all the circumstances, appellee asserts that the motion was untimely and prejudicial.

Appellee further claims that the motion to amend was futile. First, because the bankruptcy court had already determined that *Rooker–Feldman* doctrine barred any rescission claims, appellee asserts that any claims seeking such relief in the proposed amended complaint were futile.

Second, based upon the bankruptcy court's conclusion that appellants were not overcharged for title insurance under TILA and, by their own admission, had voluntary entered into the loan transaction with an awareness of the terms of the loan, appellee argues that appellants could not set forth any harm resulting from the alleged violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. § 201–1, related to the overcharge.

Third, appellee claims that because appellants had admitted at their depositions that they were not confused by the One Week Cancellation Notices, the confusion theory of liability under the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law was without merit.

For the reasons expressed in the Discussion section below, I accept appellee's contentions concerning amendment of appellants' adversary Complaint.

## STANDARD OF REVIEW

The legal determinations of a bankruptcy court are reviewed de novo. The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard. *Sovereign Bank v. Schwab,* 414 F.3d 450, 452 n. 3 (3d Cir. 2005) (internal citations omitted).

The district court's review of a bankruptcy court's denial of a motion to amend the complaint is subject to an abuse of discretion standard. *Garvin v. City of Philadelphia,* 354 F.3d 215, 219 (3d Cir. 2003). To show an abuse of discretion, appellants must show that the district court's action was arbitrary, fanciful or clearly unreasonable. A trial court's exercise of discretion should not be disturbed "unless no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 412 (3d Cir.2002).

## DISCUSSION

### Rooker–Feldman Doctrine

As explained by the United States Supreme Court, the *Rooker–Feldman* doctrine is a statutory-based doctrine which stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234, 246 (1970). Because the doctrine divests the court of subject matter jurisdiction, it may be raised at any time by either party or by the court sua sponte. *Desi's Pizza, Inc. v. City of Wilkes–Barre,* 321 F.3d 411, 419 (3d Cir.2003); *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 77 (3d Cir.2003).

The statutory foundation of *Rooker–Feldman* is the certiorari statute. Under the statute, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ." 28 U.S.C. § 1257.

Recent Supreme Court decisions have curtailed *Rooker–Feldman'* s application. However, the doctrine remains viable. *See Lance v. Dennis,* 546 U.S. 459, 464, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059, 1065 (2006) (per curiam). As recently stated by the Supreme Court, the doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corporation v. Saudi Basic Industries Corporation,* 544 U.S. 280, 284, 125 S.Ct. 1517, 1521–1522, 161 L.Ed.2d 454, 461 (2005).

The alleged federal injury must be caused by the state court judgment itself. *Exxon, supra. Rooker–Feldman* is not implicated simply because a party brings to federal court a matter it previously litigated in state court. *Parkview Associates Partnership v. City of Lebanon,* 225 F.3d 321, 329 (3d Cir.2000), asserts that *Rooker–Feldman* is not a jurisdictional version of preclusion.

"If a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," then *Rooker–Feldman* does not bar jurisdiction. *Exxon,* 544 U.S. at 293, 125 S.Ct. at 1527, 161 L.Ed.2d at 467 (internal citation omitted).

The United States Court of Appeals for the Third Circuit employs the following factors to determine if jurisdiction must be declined under the *Rooker–Feldman* doctrine.

The Third Circuit has stated:

[A] claim is barred by *Rooker–Feldman* under two circumstances: first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker–Feldman* divests the District Court of subject matter jurisdiction over those claims.

. . .

A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment .... In other words, *Rooker–Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its own orders.

*In re Knapper*, 407 F.3d 573, 580 (3d Cir.2005) (internal citations omitted).

With regard to the concept of "inextricably intertwined", the Third Circuit has specifically reaffirmed its *Rooker–Feldman* jurisprudence in a number of post-*Exxon* decisions. Although other Circuit Courts of Appeals have reformed or questioned their prior applications of *Rooker–Feldman* doctrine in light of the recent Supreme Court decisions, the Third Circuit has explicitly not followed suit. *In re Stuart*, 367 B.R. 541, 549–550 (Bankr. E.D.Pa.2007); *In re Cooley*, 365 B.R. 464, 470–473 (Bankr.E.D.Pa.2007) (noting that *Knapper, supra*, was decided after Supreme Court's *Exxon* decision).

Moreover, the Third Circuit as well as a number of bankruptcy courts within the Eastern District of Pennsylvania (specifically construing TILA as well as RESPA) have held that *Rooker–Feldman* doctrine bars claims for rescission in bankruptcy proceedings, including adversary proceedings, if such claims would have the effect of undoing a state court foreclosure action. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir.2005); *In re Stuart*, 367 B.R. 541, 549–550 (Bankr.E.D.Pa.2007); *In re Cooley*, 365 B.R. 464, 470–473 (Bankr.E.D.Pa. 2007); *In re Reagoso*, Bankr.No. 06–12961(JKF), 2007 WL 1655376, at *2–3 (Bankr.E.D.Pa. June 6, 2007).

Appellants' interpretation of the recent *Rooker–Feldman* decisions by the Supreme Court is neither persuasive, nor has it been followed by the Third Circuit. In every case decided since the *Exxon* decision, when faced with the question of whether the "inextricably intertwined" factor remains a valid consideration in the analysis of claims which may be jurisdictionally barred under the *Rooker–Feldman* doctrine, the Third Circuit has reaffirmed that the factor applies. *See, e.g., Gary v. Braddock Cemetery*, 517 F.3d 195, 206 (3d Cir.2008).

■ Chief Judge Sigmund's analysis, incorporating the analysis of *In re Randall*, 358 B.R. 145 (Bankr.E.D.Pa. 2006) (Fox, J.), is squarely on point. A mortgage foreclosure action depends upon the existence of a valid mortgage. A proper claim that a loan must be rescinded pursuant to TILA would have the effect of invalidating the mortgage.

Thus, if appellants' claim for rescission were permitted to proceed and appellants' obtained a favorable judgment, the resulting federal judgment would necessarily negate the state court foreclosure judgment, a judgment which had been rendered prior to the commencement of the bankruptcy

proceedings. This result is precisely the outcome prohibited by *Rooker–Feldman* doctrine.

This reasoning has been followed in numerous decisions by the Third Circuit as well as in multiple bankruptcy decisions issued within this District. *See In re Knapper, supra; In re Faust,* 353 B.R. 94, 100 (Bankr.E.D.Pa. Sept.26, 2006).

Appellants have not demonstrated any legal error regarding the bankruptcy court's application of the *Rooker–Feldman* doctrine. Appellants' claims for rescission of their loan pursuant to TILA were properly dismissed.

Accordingly, the February 27, 2007 Order of the bankruptcy court is affirmed insofar as it upheld the application of the *Rooker–Feldman* doctrine to appellants' claims for rescission in their adversary Complaint.

### TILA Claim

### Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 governing summary judgment. Thus, the same summary judgment standard is applicable in both civil and bankruptcy actions. *See In re Mushroom Transportation Company, Inc.,* 382 F.3d 325, 335 (3d Cir.2004).

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company,* 316 F.3d 431, 433 (3d Cir.2003). Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. *Anderson, supra.*

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *Watson v. Eastman Kodak Company,* 235 F.3d 851, 858 (3d Cir.2000). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Ridgewood Board of Education v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir.1999); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

### Dismissal of TILA Claim

Under TILA, a lender must make certain material disclosures prior to or at the closing of a loan transaction, including the "finance charge" associated with the loan. 15 U.S.C. §§ 1602(u) and 1638(a); 12 C.F.R. §§ 226.17 and 226.18. The "finance charge" includes all of those charges "payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit". 15 U.S.C. § 1605(a).

TILA expressly excludes title insurance from the definition of finance charge. 15 U.S.C. § 1605(e)(1). However, title insurance charges are not excluded from the definition to the extent they are not bona fide and reasonable. 12 C.F.R. § 226.4(c)(7)(I). Stated alternatively, where the title insurance charge is unreasonable or excessive, that portion of the charge which is unreasonable or excessive must be included in the finance charge and disclosed. *Johnson v. Know Financial*

*Group, LLC,* Civ.A.No. 03–378, 2004 WL 1179335, at *6 (E.D.Pa. May 26, 2004) (VanAntwerpen, J.).

 Courts assess the reasonableness of title insurance premiums through comparison of the disputed charges with the prevailing rates of the industry in the locality. *Jones v. Aames Funding Corporation,* Civ.A.No. 04–CV–4799, 2006 WL 2845689, at *5 (E.D.Pa. March 8, 2006) (Davis, J.) (internal citation and quotation omitted).

In Pennsylvania, uniform title insurance charges are established by the Manual of Title Insurance Rating Bureau of Pennsylvania ("TIRBOP Manual"), which is approved by the Pennsylvania Insurance Department. *Johnson v. Know Financial Group, LLC, supra,* at *6 n. 6. Courts generally use the TIRBOP Manual rates as the gauge for determining the reasonableness of title insurance rates. *Davis v. Deutsche Bank National Trust Company,* Civ.A.No. 05–CV–4061, 2007 WL 3342398, at *4 (E.D.Pa. Nov.8, 2007).[7]

The TIRBOP Manual provides that a borrower in a refinance or substitution loan will be charged the "basic rate" for title insurance unless the borrower qualifies for a discounted "reissue rate" pursuant to section 5.3 or a discounted "refinance rate" pursuant to section 5.6.

Under section 5.3, governing the reissue rate, "[a] purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy."

Under section 5.6, governing refinance and substitution loans, "when a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate." Thus, to qualify for the refinance rate, (1) the prior mortgage must have carried title insurance; (2) the premises must be identical; and (3) there must be no change in ownership of the premises.

Notably, section 5.6 does not have an explicit requirement that the borrower provide evidence of the terms of the prior title insurance rate for the refinance or substitution title insurance rate. However, courts within the Third Circuit generally require the borrower to offer some evidence that the lender knew or should have known of the existence of the prior title insurance in order for the borrower to survive a motion for summary judgment. *See, e.g., Jones v. Aames Funding Corporation, supra,* at *6–7.

The vast majority of bankruptcy courts and district courts within this judicial district have held that "[a]t the very least, if a borrower contends that a lender failed to obtain the lowest title insurance rate permitted by law, she has an affirmative burden to demonstrate that the lender knew or should have known of the facts justifying that lower rate." *In re Escher,* 369 B.R. 862, 877 (Bankr.E.D.Pa.2007) (internal citation and quotation omitted); *see also In re Glauser,* 365 B.R. 531, 537 (Bankr.E.D.Pa.2007); *In re Fields,* Civ.A. No. 06–1753, 2006 WL 2191342, at *3–4 (E.D.Pa. July 31, 2006) (Bartle, C.J.).

---

7. Appellants and appellee agree that the bankruptcy court's use of the TIRBOP Manual was proper to assess the title insurance rates in this action.

Moreover, the Third Circuit recently held in a nonprecedential opinion that a plaintiff claiming a violation of TILA must provide evidence that prior to or at loan closing he or she provided evidence to the lender which shows entitlement to the refinance rate. *Ricciardi v. Ameriquest Mortgage Company,* 164 Fed.Appx. 221, 226 (3d Cir.2006).

My review of the record indicates that the bankruptcy court's findings with regard to appellants' TILA claim for damages were firmly grounded in the facts before it, and its legal conclusions were supported by the vast majority of bankruptcy law decisions within this Circuit. Thus, with regard to the burden of production for appellants' title insurance claim pursuant to TILA, I follow the substantial weight of authority within this district as well as the Third Circuit's nonprecedential opinion.

■ In order for appellants' TILA claim (that appellee failed to obtain the lowest title insurance rate permitted by law) to survive summary judgment, appellants had to affirmatively demonstrate that appellee knew or should have known of the facts justifying the lower rate. Appellants failed to meet this burden in their response to appellee's summary judgment motion.

■ As the bankruptcy court correctly concluded, appellants failed to recall the basic facts of the Option One loan transaction and they failed to produce any records of the prior loan to appellee. At their depositions, appellants admitted that they did not have any records from the Option One loan and they could not recall whether they were issued title insurance in connec-

tion with that mortgage. Appellants also admitted that they had no memory of ever discussing the existence of prior title insurance with appellee prior to or at the Ameriquest loan closing. Moreover, appellants presented no evidence which indicated that appellee had actual or constructive notice that appellants had obtained title insurance with their Option One loan in response to appellee's motion for summary judgment.[8]

Additionally, appellants were not caught by surprise by the bankruptcy court's decision on the title insurance issue. Appellants' assertion that they did not know that their failure to produce evidence of prior title insurance would be a dispositive issue is disingenuous. Appellants were each questioned about the existence of prior title insurance at their depositions. Appellee's Memorandum of Law in Support of Defendant Ameriquest Mortgage Company's Motion for Summary Judgment consistently and repeatedly refers to this issue. The title insurance issue was clearly raised by appellee throughout the course of the litigation.

Appellants' argument that the burden of proof has been improperly placed upon them, although grounded in the text of section 5.6 of the TIRBOP Manual, is essentially a public policy argument. Indeed, as appellants argue, borrowers may be unlikely to know of their eligibility for reduced title insurance rates and lenders may be more likely to be aware of the borrower's eligibility.

However, the standard adopted above takes these policy concerns into consideration. The burden is appropriately allo-

---

**8.** As the bankruptcy court correctly concluded below, appellants' assertion that the prior loan itself is sufficient evidence of a prior title insurance policy is not supported by any known legal authority. Knowledge of a prior loan, without the loans terms or other related documents, is also insufficient to show that appellee had constructive notice that it was the type of loan that should have or did require title insurance.

cated to the borrowers in a refinance transaction because they are the parties with the best access to the records of their prior loan. Therefore, borrowers have the burden to demonstrate that their lender knew or should have known of the existence of a prior title insurance policy. If borrowers supply sufficient information to the lender, this burden is satisfied.

Thus, in the context of the this action, had appellants supplied the terms of their prior loan and the applicable title insurance policy provisions, they would have given sufficient notice to appellee and the rate should have been accordingly adjusted (assuming they indeed had prior title insurance and the other applicable section 5.3 or 5.6 factors are met). The standard did not mandate that appellants affirmatively request a reduced title insurance rate. Rather, the standard required that, at a minimum, appellants supply sufficient information to appellee to alert it to fact that their prior loan carried title insurance.

Accordingly, the February 27, 2007 Order of the bankruptcy court is affirmed insofar as it upheld the dismissal of appellants' TILA claim in Count I of their adversary Complaint.

### Amendment of Adversary Complaint

 Federal Rule of Civil Procedure 15(a), governing amendment of pleadings, is incorporated in Federal Rule of Bankruptcy Procedure 7015. Where amendment is sought after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Thus, whether to permit an amendment to a complaint rests within the sound discretion of the trial court. *Coventry v. U.S. Steel Corporation,* 856 F.2d 514, 519 (3d Cir.1988).

 Leave to amend may be denied on the basis of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility of amendment. *Massarsky v. General Motors Corporation.,* 706 F.2d 111, 125 (3d Cir.1983). The Third Circuit has made the following pronouncement with regard to the delay and prejudice which may result from late amendments to a complaint:

> The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay.... In fact, delay alone is an insufficient ground to deny leave to amend .... However, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party. Delay may become undue when a movant has had previous opportunities to amend a complaint.

> When a party delays making a motion to amend until after summary judgment has been granted to the adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling.... Thus, while bearing in mind the liberal pleading philosophy of the federal rules ..., the question of undue delay requires that we focus on the movant's reasons for not amending sooner....

> Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend.... The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted.... Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.

*Cureton v. National Collegiate Athletic Association*, 252 F.3d 267, 272–273 (3d Cir. 2001) (internal quotations and citations omitted).

The bankruptcy court did not abuse its discretion in denying appellants' motion to amend their Complaint. As the bankruptcy court concluded, appellants were aware of the basis of the proposed amendments far in advance of the deadline to file all pre-trial motions. The proposed amendments did not rely on any newly discovered evidence which first came to light after appellants' had commenced the adversary proceeding or during the discovery process. Moreover, appellants failed to timely file their motion to amend, waiting until after the deadline to file all pre-trial motions had passed.

This undue delay in seeking leave to amend was highly prejudicial to appellee. Only after all discovery had been completed, including the depositions of both appellants, and when facing a well-founded (and ultimately meritorious) motion for summary judgment did appellants seek to amend their Complaint. In an admittedly untimely motion, appellants sought to change the legal theories on which the action was premised and to add an additional party. Essentially, from within a trial-ready adversary proceeding, appellants attempted to bring an entirely new action when it appeared they could not succeed on their original claims.[9]

The prejudice to appellee in having to start litigation anew is readily apparent. If the court allowed appellants to amend their Complaint, discovery would necessarily have to be re-opened. As a result,

appellee would have to go through the time and expense of conducting additional discovery, including deposing the appellants once again. Appellee would also have to incur additional costs in preparing for a new trial based on new theories of liability, as well as prepare any appropriate motions, briefs and memoranda. Thus, if appellants' untimely motion to amend their Complaint had been granted, appellee faced significant undue prejudice.[10]

Accordingly, the February 27, 2007 Order of the bankruptcy court is affirmed insofar as it denied appellants' motion to amend their adversary Complaint.

## CONCLUSION

For all the foregoing reasons, and the reasons expressed in Chief Judge Diane W. Sigmund's February 8, 2007 Memorandum Opinion, her February 8, 2007 Order granting summary judgment in favor of appellee and against appellants in bankruptcy adversary number 06–417, and her February 27, 2007 Order denying reconsideration of the February 8, 2007 Order, are each affirmed.

## ORDER

NOW, this 26th day of March, 2008, upon consideration of the Notice of Appeal filed March 9, 2007 by plaintiffs-appellants Deborah A. Madera and Michael Madera from the February 27, 2007 Order of Chief United States Bankruptcy Judge Diane Weiss Sigmund of the United States Bankruptcy Court for the Eastern District of Pennsylvania which denied reconsideration of the bankruptcy court's February 8, 2007

---

**9.** Although the bankruptcy court below did not find that appellants or their counsel had acted in bad faith in filing their untimely motion to amend, I note that appellants' actions have many hallmarks of deliberate strategic behavior.

**10.** Because I conclude that the untimely motion to amend would have been unfairly prejudicial to appellee, I need not consider whether the proposed amendments were also futile.

Order and accompanying Memorandum Opinion granting summary judgment in favor of defendant-appellee Ameriquest Mortgage Company in an adversary proceeding; upon consideration of the Brief of Appellants filed May 14, 2007, the Brief of Appellees filed June 15, 2007, the Reply Brief of Appellants filed July 2, 2007; after oral argument held February 1, 2008; and for the reasons expressed in the accompanying Opinion,

*IT IS ORDERED* that the February 8, 2007 Order and the February 27, 2007 Orders of Chief Judge Sigmund are each affirmed.

*IT IS FURTHER ORDERED* that the Clerk of Court shall mark this matter closed for statistical purposes.