NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1552
_____

ERNEST KEISTER,
Appellant

v.

PPL CORPORATION;
IBEW LOCAL 1600

_____

No. 16-1553
_____

ERNEST KEISTER

v.

PPL CORPORATIN;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1600

*Donald P. Russo,
Appellant

*(Pursuant to Rule 12(a), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 4-13-cv-00118)
U.S. District Judge:  Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)

October 26, 2016

Before:  FISHER, VANASKIE, KRAUSE, *Circuit Judges*.

(Filed: January 27, 2017)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Ernest Keister appeals the District Court's grant of summary judgment on his employment discrimination suit against his employer PPL Corporation and his union, the International Brotherhood of Electrical Workers, Local 1600. Keister's attorney, Donald P. Russo, separately appeals the District Court's grant of PPL's Rule 11 sanctions motion and the Union's Rule 54 motion for fees. We will affirm the orders and final judgement of the District Court.

I.

Keister began working at PPL in 1978. At all relevant times, Keister was a member of the Union and as such, a party to a collective bargaining agreement ("CBA") with PPL. The CBA includes a specific process to request a job reevaluation, including grievance and arbitration procedures in the event that PPL denies the request. In such an event, the aggrieved employee may discuss the decision with the Union. The next step is

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

to submit a formal written grievance or request that one be submitted on the employee's behalf.

During his tenure as a "Nuclear Information Services Technician," Keister submitted a job reevaluation request. At the time, he was sixty-four years old. Keister felt that he was undercompensated and that his actual performance went above and beyond what is required from an employee in that position. PPL took no action on the request, and Keister's appeal to the Union was unsuccessful. A Union representative thereafter instructed Keister to file an official grievance or request that one be filed on his behalf, which he did not do. Instead, he filed an EEOC charge of discrimination against PPL alleging that PPL did not reevaluate his position because of his age. On August 30, 2012, the EEOC dismissed Keister's charge and mailed Keister a right-to-sue letter.

On January 17, 2013, represented by Russo, Keister brought an employment discrimination lawsuit against Appellees.[1] Over the course of two years, Keister twice amended his pleadings. Keister alleges claims of age discrimination against PPL under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").[2] Keister alleges a violation of § 301 of the Labor Management Relations Act ("LMRA")[3] against PPL and the Union.

---

[1] Unless otherwise indicated, we will refer to PPL and the Union collectively as "Appellees" and Keister and Russo collectively as "Appellants."

[2] *See* 29 U.S.C. § 621 *et seq*.; *see* 43 Pa.Stat. § 951 *et seq.*

[3] 29 U.S.C. § 185(a).

The District Court granted Appellees' motions for summary judgment concluding that the ADEA claim was time-barred, Keister failed to present a prima facie case of age discrimination under the ADEA and PHRA, and Keister failed to exhaust his administrative remedies or present evidence that either Appellee breached their respective duties as required by the LMRA.

PPL moved for Rule 11 sanctions, and the Union thereafter moved for attorney's fees and non-taxable costs under Federal Rule of Civil Procedure 54(d). Based on Appellees' statement of fees, the District Court applied the lodestar rate and granted PPL's motion in the amount of $57,958.59, and the Union's motion in the amount $57,958.96.

This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary.[4] We will affirm if the movant shows that "there is no genuine issue as to any material fact, and … the evidence is such that a reasonable fact finder could find only for the moving party."[5] We review a district court's award of attorney's fees and

---

[4] *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).
[5] *Id.*

4

grant of Rule 11 sanctions for abuse of discretion.[6] "[W]e evaluate the court's factual determinations, legal conclusions, and choice of an appropriate sanction with substantial deference, considering not whether we would make the same precise determinations, but only whether those determinations are contrary to reason or without a reasonable basis in law and fact."[7]

III.

We will first address the District Court's grant of summary judgment on the ADEA, PHRA and LMRA claims. We will then turn to the District Court's grant of Rule 11 sanctions and Rule 54 fees. For the reasons that follow, we will affirm the District Court's orders and final judgment.

A.

We first address Keister's ADEA and PHRA claims. To establish a prima facie case of age discrimination under the ADEA or PHRA, a plaintiff must present either direct or indirect evidence of discrimination.[8] To meet this burden through the use of indirect evidence, a plaintiff must show that a younger and similarly situated employee

---

[6]*See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001).

[7] *Ario*, 618 F.3d at 287 (citations and internal quotation marks omitted).

[8] *See Fakete v. Aetna, Inc.*, 308 F.3d 335, 337-38 (3d Cir. 2002) (an ADEA plaintiff can prove his claim through the use of either direct or indirect evidence); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) ("The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively.").

received more favorable treatment.[9] Keister was unable to point to a younger and similarly situated employee that received preferential treatment. Keister argues that he did not need to meet this burden because he was a "department of one."[10] Even if we were to excuse the absence of comparator evidence, Keister failed to introduce any evidence at all that PPL's decision was linked to his age. In fact, PPL's denial of Keister's 1986 reevaluation request shows that Keister received the same treatment even before he reached the ADEA effective age of forty years old.[11] His age discrimination claims necessarily fail.[12] We will affirm the District Court's grant of summary judgment on the ADEA and PHRA claims.[13]

## B.

Next, we turn to Keister's LMRA claim. Keister claims that PPL's failure to reevaluate or reclassify his bargaining unit position as a managerial position breached the CBA in violation of § 301 of the LMRA. Keister argues that the Union's failure to pursue

---

[9] *Fakete*, 308 F.3d at 340 n.6.

[10] Appellants' Br. 8.

[11] Keister was thirty-nine years old when he submitted his 1986 reevaluation request. *See* 29 U.S.C. § 631(a) (limiting ADEA plaintiffs to individuals who are "at least 40 years of age").

[12] *See Fasold v. Justice*, 409 F.3d 178, 183-84 (3d Cir. 2005) (to prevail on an ADEA claim of age discrimination a plaintiff must show that his age "actually motivated or had a determinative influence on the employer's adverse employment decision" (citations and internal quotation marks omitted)).

[13] The District Court also concluded that the ADEA claim was time barred because Keister did not file his complaint within ninety days of receiving the EEOC right-to-sue letter. Because we will affirm the grant of summary judgment on the merits, we need not reach the issue of timeliness.

6

the matter breached its duty of fair representation.[14] Because the claims against PPL and the Union are "inextricably interdependent," we agree with the District Court's designation of the LMRA claim as a "hybrid § 301/fair representation claim."[15] "To prevail against either the company or the Union, … [employee-plaintiffs] must not only show that [the employer's action] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."[16]

As an initial matter, "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."[17] Unless Keister unsuccessfully sought relief through the CBA's grievance and arbitration procedures or the Court excuses the exhaustion requirement, PPL "cannot be held liable for breach of a collective bargaining agreement,"[18] and the Union cannot be held liable "for any alleged breach of the duty of fair representation."[19]

Here, it is undisputed that Keister did not exhaust the CBA's grievance procedures. Keister instead argues, without the support of legal authority, that he did not need to file a grievance because PPL failed to outright deny his request. We will not excuse Keister's failure to exhaust the grievance procedures on that basis.

---

[14] The Union's duty of fair representation arises under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*

[15] J.A. 1159 (citing *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164 (1983)).

[16] *DelCostello*, 462 U.S. at 194.

[17] *Id.* at 163.

[18] *Podobnick v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

[19] *Id.*

7

Even if we did excuse the exhaustion requirement, Keister's claim would fail. First, Keister has not shown that PPL was obligated to entertain his request. Second, when Keister contacted a Union representative to discuss PPL's inaction, the representative told Keister to either personally file a grievance or request that the Union file one on his behalf. Keister did not take the representative's advice and offers no evidence of bad faith on the Union's part. We will therefore affirm the District Court's grant of summary judgment on the LMRA claim.

C.

We now turn to Russo's challenge to the District Court's imposition of Rule 11 sanctions. We find Russo's arguments unpersuasive. First, he asserts that it is improper to impose sanctions based on the misleading content of the second amended complaint because the court permitted leave to amend. We disagree. Such an exception would erode the goal of Rule 11—accountability.[20] Second, Russo maintains that he should not be sanctioned for failure to succeed on a "new or novel" theory. We agree with the District Court that "[t]here is nothing 'novel' about the ADEA and the type of claim alleged here … [or] the theories that Mr. Russo has conjured up … by a desire to confuse the Court and the parties, to shroud the straightforward weaknesses of his client's claim, and to

---

[20] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (holding that the purpose of Rule 11 "is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts").

manufacture disputes where none existed."[21] Third, Russo claims that awarding

attorney's fees to PPL amounted to ADEA fee-shifting, which requires a showing of bad

faith. He cites no authority to persuade us to analyze Rule 11 sanctions under the standard

required for ADEA fee-shifting. Finally, Russo argues that because PPL refused to

participate in mediation and mitigate damages, it is improper to award it fees. This

statement is patently untrue. PPL did not refuse to participate in mediation; PPL

requested that mediation occur *after* Keister's deposition.

We cannot conclude that the District Court's decision to impose Rule 11 sanctions

was "contrary to reason or without a reasonable basis in law and fact."[22]

### D.

The District Court likewise did not abuse its discretion in granting the Union's

motion for Rule 54(d) fees. Under the American Rule, each party must bear the burden of

its own legal expenses. We recognize an exception to that rule where it is clear that the

"losing party litigated in bad faith, vexatiously, or for oppressive reasons."[23] The District

Court concluded that Keister's LMRA claim against the Union was "unequivocally

lacking in merit[,] … substantively frivolous as it related to his failure to show any

breach of the Union's duty of good faith representations[,] wholly contrary to Third

---

[21] J.A. 1379.
[22] *Ario*, 618 F.3d at 287.
[23] *Mobil Oil Corp. v. Indep. Oil Workers Union*, 670 F.2d 299, 305 (3d Cir. 1982).

Circuit case law as it related to mandated procedural exhaustion in LMRA § 301 actions … [and] factual[ly] baseless."[24] We agree.

Russo argues that because the Union filed its Rule 54 motion before final judgment was entered, the motion was untimely. Under Rule 54, a motion for attorney's fees shall "be filed no later than 14 days after the entry of judgment."[25] Nothing in the text of the rule indicates that filing before entry of judgment is improper and Russo offers no legal authority to persuade us otherwise.

Russo also argues that because the notice for the Rule 11 hearing did not specifically state that the Rule 54 motion would be considered, the Rule 54 decision must be overturned. We disagree for two reasons. First, the same conduct gave rise to the Rule 11 and Rule 54 motions. Second, during the Rule 11 hearing, Russo affirmatively opted to respond to the Rule 54 motion when the court offered him the opportunity to wait until briefing concluded.[26] Russo cannot plausibly argue that he was prejudiced by his own consent to address the Rule 54 motion during the Rule 11 hearing. Based on Russo's conduct, we will affirm the District Court's imposition of Rule 54 fees.

E.

Having found that the District Court did not abuse its discretion in granting either PPL's motion for Rule 11 sanctions or the Union's motion for Rule 54 fees, we turn to

---

[24] J.A. 1397.
[25] Fed. R. Civ. P. 54(d)(2)(B)(i).
[26] J.A. 1268.

10

the amount of each fee award. On appeal, Russo does not challenge the District Court's lodestar fee and cost award calculations. Russo's only challenge is that the District Court did not adequately consider his ability to pay.

This Court has held that monetary sanctions are meant to serve as a deterrent and are inappropriate if they are so great that they are punitive.[27] Given Russo's history of sanctions for similar conduct and the court's previous "leniency because of his status as a sole practitioner," the District Court concluded that Russo's "alleged financial circumstances simply do not outweigh the need for adequate deterrence in this case."[28] On appeal, Russo reasserts the same bare statement he made to the District Court— namely, that he is a sole practitioner. We do not find that the awards amount to an abuse of discretion, especially where Russo failed to present evidence of actual inability to pay or that the sanctions would cause him to suffer undue hardship.

Viewing the District Court's determinations with substantial deference, as we must, we conclude that it was not an abuse of discretion to grant PPL's Rule 11 motion or the Union's Rule 54 motion in the amounts ordered.

IV.

For the reasons set forth above, we will affirm the District Court's orders and final judgment.

---

[27] *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 196 (3d Cir. 1988).

[28] J.A. 1393.