**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 21-3043

———————

JULIA HANKERSON,
                                        Appellant

v.

LEGACY TREATMENT SERVICES INC.

———————

On Appeal from the United States
District Court for the District of New Jersey
(D.C. Civil No. 1-19-cv-18927)
The Honorable John R. Padova[*]

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
October 21, 2022

Before: GREENAWAY, JR., MATEY, and ROTH, *Circuit Judges*.

(Opinion filed:  November 21, 2022)

———————

OPINION[†]

———————

[*] The Honorable John R. Padova for the Eastern District of Pennsylvania sitting as trial judge in the United States District Court for the District of New Jersey.
[†] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Julia Hankerson claims that age and race drove Legacy Treatment Services to deny her a promotion and terminate her employment. Crediting the company's explanation that policy and performance explained those decisions, the District Court granted Legacy summary judgment. Finding no error, we will affirm.

**I.**

**A.     The Job**

Hankerson began working for Legacy in 2018. Although hired for a staff position, she agreed to supervise clinical operations a few months later. She then applied to be director of Legacy's outpatient program. But the posting pointed to Legacy's preference for licensure as a Clinical Alcohol and Drug Counselor (otherwise known as "LCADC"), a credential Hankerson does not hold. Legacy began interviewing candidates selected by an external recruiting agency, including a few without an LCADC license.

Meanwhile, Hankerson advised her supervisor that she intended to change Legacy's client intake process. But when Hankerson's boss denied her proposal, Hankerson said that she would "no longer Supervise the Interns effective immediately" and demanded reassignment to a new position. App. 10. Legacy then terminated Hankerson's employment, citing her abrupt resignation as a supervisor and the lack of transition planning. After considering additional candidates for the director position, Legacy hired an LCADC for the position.

2

**B.      The Lawsuit**

Hankerson sued Legacy alleging race and age discrimination in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the New Jersey Law Against Discrimination ("NJLAD").[1] Hankerson also filed a successful claim for state unemployment benefits.[2] Hankerson moved for partial summary judgment, citing the favorable benefits ruling. And Legacy moved for summary judgment on all claims. The District Court granted Legacy's motion for summary judgment and denied Hankerson's motion. Hankerson now appeals both orders.[3]

## II.

We analyze Hankerson's state and federal discrimination claims using the familiar *McDonnell Douglas* burden-shifting framework. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (applying *McDonnell Douglas* framework to Title VII discrimination claim); *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (ADEA claim); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (NJLAD claim). Under this framework, Hankerson bears the initial burden of showing a prima

---

[1] Hankerson has exhausted her administrative remedies. She filed an EEOC complaint and received a right to sue letter before commencing this action.

[2] At first, the state denied Hankerson unemployment benefits concluding she was fired for misconduct. But the New Jersey Department of Labor Board of Review reversed, concluding it was "not persuaded that [Hankerson's conduct] . . . was improper and a disregard of the employer's standards of behavior." App. 195.

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment to Legacy de novo, affirming only if, considering the facts in the light most favorable to Hankerson and drawing all reasonable inferences in her favor, *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 (3d Cir. 1995), no reasonable jury could rule in her favor, *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).

facie case of unlawful discrimination by establishing membership in a protected class, qualification for the position sought, and an adverse employment action occurring "under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Then, "[t]he burden [of production] must shift to the employer to articulate some legitimate, nondiscriminatory reason for [its decision]." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Legacy does not challenge Hankerson's prima facie case, but offers nondiscriminatory reasons for its decisions. Hankerson, they argue, was terminated after abandoning her supervisory duties without the immediate appointment of another supervisor. That conduct, along with Hankerson's short tenure at Legacy and lack of an LCADC license, says Legacy, are the reasons she was not hired as director. These are "legitimate, nondiscriminatory reason[s]," *id.*, so Hankerson faces the burden of showing pretext with evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Hankerson argues that the District Court made two errors when it awarded summary judgment to Legacy: 1) drawing unwarranted inferences in Legacy's favor; and 2) ignoring the preclusive effect of the New Jersey Labor Board's decision. We disagree.

4

## A.    Evidence and Inferences

Hankerson first argues that a reasonable jury could have inferred that Legacy's expressed preference for an LCADC was a post-hoc rationale for not hiring her.[4] But Legacy's job posting explained that the ability to supervise employees in drug and alcohol services was a requirement. Only one candidate without an LCADC license was interviewed before Hankerson's termination, when Hankerson remained under consideration for the position. After Hankerson's termination, two other candidates without LCADC licenses were interviewed, neither of which had Hankerson's negative employment history with the company. Nor is there anything in the record beyond speculation to suggest Legacy fired Hankerson only because it did not want to promote her. Rather, all the evidence points the other way: Hankerson's decision to leave her supervisory duties without warning caused her termination.[5]

Next, Hankerson argues that the District Court needed to infer "that Legacy was not particularly concerned" with Hankerson's abrupt actions. Opening Br. 42. Not so, as Hankerson herself notes that Legacy's COO had to "immediately . . . provid[e] clinical supervision" to the social workers Hankerson no longer supervised. Opening Br. 41–42. And, in any event, if the temporary loss of services associated with terminating an

---

[4] Hankerson also argues that comparators are unnecessary because a jury could infer that Legacy's policy required it to interview internal candidates before external ones. But that policy required posting new openings to allow employees to apply, not to invite all to interview.

[5] Still, even if we considered the post-termination events, no reasonable inference of discrimination arises. The successful candidate was an LCADC and, of course, did not have Hankerson's negative history with the company.

5

employee was itself evidence of pretext, then terminated employees would always carry their third-step *McDonnell Douglas* burden and summary judgment for the employer would never be appropriate.

Finally, Hankerson argues that the District Court erroneously "broke apart the evidence" rather than considering the totality of the facts. Opening Br. 26–27 (citing *Fuentes*, 32 F.3d at 764). But the District Court did consider all the evidence and merely recognized that some evidence was relevant to discounting Legacy's explanations, while some addressed Legacy's possible motivations.

Moreover, neither of Hankerson's arguments about the District Court's relevance determinations is enough to carry the day. She points to Legacy's policy favoring internal promotion. But Hankerson identifies no logical connection between Legacy's promotion policy and its reaction to her surprise email adjusting her own work responsibilities. Nor is the balance changed by testimony from Legacy's human resource manager that she could not recall any employee previously being fired for merely "disagree[ing] with Legacy's view of the standards of . . . professional responsibility." App. 21. Legacy never claimed that it fired Hankerson for disagreeing with professional standards, but that she acted on that disagreement without warning.

In sum, Hankerson identified no evidence that refutes the District Court's findings that Legacy's promotion and termination decisions were not discriminatory.

## B.    Collateral Estoppel

Hankerson also argues that because the New Jersey Department of Labor Board of Review found her eligible for state unemployment benefits, Legacy is estopped from

claiming her termination was lawful. The Board based its conclusion on factual findings that her job description "did not require her to supervise" other social workers, and that she had been supervising solely "as a professional courtesy to [Legacy]." App. 194. And the Board was "not persuaded that her request to continue working as a mental health therapist was improper and a disregard of the employer's standards of behavior." App. 195. But as the District Court explained, the Board's factual findings are not entitled to preclusive effect.[6]

Federal law requires federal courts to give a state administrative decision the same preclusive effect it would receive in that state. *See Dici v. Pennsylvania*, 91 F.3d 542, 547–48 (3d Cir. 1996). And New Jersey state law provides that, unlike most other state administrative proceedings, New Jersey Department of Labor unemployment decisions are not entitled to preclusive effect in state courts. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1014–15 (N.J. 2006).

Hankerson offers two responses, both unavailing. First, she argues that *Olivieri* no longer controls because it rested on a lack of substantive and procedural safeguards in New Jersey unemployment compensation adjudications that has since been redressed. But a footnote in *Olivieri* expressly disclaims this reading of its decision: "even if the procedural effects we have noted were absent" from unemployment decisions, the "broad

---

[6] Moreover, the Board never addressed pretext. At most, the Board concluded that Legacy misinterpreted its own standards when it fired Hankerson, and found that supervising other social workers was not a requirement of her job description. But this does not establish that Legacy's claimed justifications for the termination were pretextual.

7

holding" "that unemployment compensation determinations are not entitled to collateral estoppel effect" "would [still] apply" because "fundamental differences abound between the unemployment compensation scheme and other adjudicative decisions." *Id.* at 1013 & n.8. So changes in New Jersey's process for adjudicating unemployment benefits have not displaced *Olivieri*'s holding.

Second, Hankerson argues that *Olivieri* "must be strictly limited to its facts," Opening Br. 45, because a subsequent New Jersey Supreme Court case, *Winters v. North Hudson Regional Fire & Rescue*, 50 A.3d 649 (N.J. 2012) (per curiam), stressed that state courts should liberally afford preclusive effect to state administrative decisions. But *Winters* only addressed the preclusive effect of a state Civil Service Commission adjudication, *see id.* at 651, and did not overrule *Olivieri*'s specific holding about state administrative unemployment actions. To the contrary, *Winters* cited *Olivieri* as controlling law. *See id.* at 659, 661. Because New Jersey law denies preclusive effect to the Board's factual findings, so must we.

## IV.

Finding no error in the District Court's opinion, we will affirm.